BELDING *against* PITKIN, executrix of PITKIN.

An action will not lie upon a contract to pay over half the proceeds of an illegal contract, though the money arising from it has been received by the defendant.(a)

THIS was an action of assumpsit, tried before the Chief Justice, at the Columbia circuit, in July, 1803. The declaration contained the common money counts, and a count for work, labor and services, under which it was agreed that the plaintiff might offer evidence of a special contract. The defendant's testator was possessed of a grant from the

(a) That an unlawful transaction should ever, in any way, become the legal basis of an action at law; or, in other words, that the law should ever, in any manner, lend its aid to enforce claims arising out of a violation of its own principles, strikes the mind, on being barely stated, as repugnant to all reason and good order. The judges 'in Westminster Hall seem, however, to have been in some degree astute in supporting actions originating in illegal transactions. Thus, it has been said that where the illegal contract is executory, money paid upon it may be recovered back, *aliter*, if it be executed; (Per Buller, J., in *Lowry* v. *Bordieu*, Doug. 470 ; *Tappenden* v. *Randall*, 2. Bos. & Pull. 467;) and that where the contract is only *malum prohibitum*, and not *malum in se*, if a third party lend money to pay a loss incurred in its performance, the loan, though with notice, is a good consideration to support an action. *Faikney* v. *Reynous*, 4 Burr. 2069; *Petrie* v. *Hannay*, 4 D. &. E. 418. These cases are, perhaps, very questionable. They were disapproved of by Lord Thurlow; and in *Ex parte Mather*, 3 Ves. jun. 373, Lord Loughborough says, what is called in them a consent, "is a confederacy to break a positive law." This idea of his lordship is in unison with the cases under the statute prohibiting the sale of public offices; (5 & 6 Edw. VI. c. 16;) for, though it be a penal law, and, according to the rule of our jurisprudence, not to be extended as to penalties and punishments, " yet, if there be a public mischief, and a court of equity" (why not a court of law also ?) "sees private contracts made to elude laws enacted for the public good, it ought to interfere." On this principle of Lord Talbot's, in *Law* v. *Law*, Forrest, 141, it has been determined that an action at common law cannot be maintained on an agreement to allow the plaintiff a certain share in the profits of an office, in which he superannuated himself to get the defendant appointed. *Garforth* v. *Fearon*, 1 H. Bl. 327.

Independently of the inferences to be drawn from the last determination, the diversity sanctioned by the cases of *Faikney* v. *Reynous*, and *Petrie* v.

Susquehannah commissioners, so called, for a township of land in the county of Luzerne, and commonwealth of Pennsylvania, under the Connecticut title only. He contracted with the plaintiff, that if he would sell this for him, he would give for so selling the same, the one half of

*Hannay,* have received a very severe shock by the decisions in *Steers* v. *Lashley,* 6 D. & E. 61, and *Aubert* v. *Maze,* 2 Bos. & Pull. 371; the former having settled that a bill drawn by an agent, in illegal transactions, on his principal, for the amount of money paid on his account in settling those transactions, cannot be recovered on by a third person taking it with knowledge of the consideration; and the latter, that money paid by an associate in a prohibited trade, on account of losses sustained in it, cannot be recovered from the other, even under an award made by the arbitrator, to whom the settlement of that balance, and other things, were referred.

In order to take an action out of the baneful effect of an illegal consideration, the English adjudications have made this further distinction, that when the suit is against a third person, who has received money under an unlawful agreement between two others, it shall not lie with him to set up its illegality; *Farmer* v. *Russell,* 1 Bos. & Pull. 296;) therefore, an insurance broker, who has received upon an illegal policy the amount of the loss, cannot make the vice of the contract his defence. *Tenant* v. *Elliot,* 1 Bos. & Pull. 3. Lord Kenyon, however, in *Sullivan* v. *Graves,* Park, 8, and 1 Selw. N. P. 57, determined that in an action by a partner in illegal insurances who had paid the whole of the losses, against a broker who had received on the plaintiff's account half the amount from the other partner, the defendant might avail himself of the unlawfulness of the transaction, and that the plaintiff could not recover. Yet, where money was deposited in the hands of the defendant, as a stakeholder upon a wager, the subject matter of which was illegal, and notice given not to pay it over to the winner, it has been allowed to be recovered by the party who made the deposite. *Cotton* v. *Thurland,* 5 D. & E. 405; *Lacaussade* v. *White,* 7 D. & E., as explained in 8 D. &. E. 575. But after a party to a wager against law has lost his bet, and the stakeholder has paid it over, either by the direction or assent of the plaintiff who staked the money, he cannot recover it even from the winner. *Howson* v. *Hancock,* 8 D. & E. 575. So, if property be left in the hands of a party to an illegal bet, to become his if he win it, an action for its value cannot be maintained against him, after the bet is lost. *M'Cullum* v. *Gourlay,* 8 Johns. Rep. 146. Yet, such winner will not be allowed to recover against a stakeholder of an illegal bet, even upon his accountable receipt, though notice not to pay over do not appear to have been given; (*Bunn* v. *Riker,* 4 Johns. Rep. 426;) and Hoffman, Recorder of New York, has ruled, that although a stakeholder pay over to the winner of an illegal bet, in violation of the notice not so to do, an action cannot be maintained against him

*all that should be obtained over and above one    [*148]
thousand dollars. The plaintiff did sell the town-
ships to one Anthony Maxwell, and took his notes for two
thousand five hundred dollars, about one thousand seven
hundred and fifty dollars of which had been paid to the
testator. The residue was not paid by Maxwell to any
person. A verdict for six hundred dollars was taken by
consent, subject to the opinion of the court upon this ques-
tion: whether any action could be maintained to recover
the moiety of the profits arising from the sale of lands
under the Connecticut title, those lands being situated in,
and claimed by, the commonwealth of Pennsylvania?

*Williams*, for the defendant. The transaction was illegal,
because the title was not an object of legal sale. It was a
pretended title. The action is for a compensation for doing
an unlawful act; for in the Susquehannah causes it was set-
tled, that sales of these titles were void.[1]

by the person making the deposit. *Bushman* v. *Cashman*, 1 Esp. Dig. part
1, Amer. edit. by Gould, 25.

Where a statute is made to protect a particular class of persons by avoid-
ing the contracts they enter into with others, as the English statutes against
lottery insurances and usury, for the premiums paid in the one case, and
the excess of interest in the other, an action may be maintained; *(Jacques* v.
*Golightly*, 2 Bl. Rep. 1073; *Jacques* v. *Withy*, 1 H. Bl. 65; *Bosanquet* v. *Dash-
wood*, Cas temp. Talb. 38;) *aliter*, where the parties are *in pari delicto*, by
each being of that class against whom the statute is directed. *Clark* v. *Shee*,
Cowp. 197; *Browning* v. *Morris*, Cowp. 790.

The principle of the decision in the text has been acknowledged in *Bar-
nard* v. *Crane*, 1 Tyler, 467. See also *Maybin* v. *Coulon*, 4 Dall. 298; *Han-
nay* v. *Eves*, 3 Cranch, 242; 2 Fonb. 6. n. (c).

Amidst this multiplicity of decisions, not altogether consistent, those of
Hoffman and Lord Kenyon seem most consonant to the purity of law. It
might, perhaps, have been well if the courts had laid down the broad rule,
that for money due, paid, lent, or received, on an illegal contract, or for any
other claim arising out of one, by or against parties, privies, or any third
persons, a suit cannot be maintained either at law or equity.

[1] As to illegal contracts, &c., see Story on Contracts, p. 105, § 165 and
cases cited.

*W. Van Ness*, contra.   The parties have consented to the whole of the transaction, and have actually received money under the contract.   To whom the title belongs is immaterial.   Though the contract might have been void, yet, as it was not *malum in se*, but only a *malum prohibitum*, and has been consummated, the money due to the plaintiff out of the consideration actually paid may be recovered. This is different from the case of enforcing a contract.

*Williams*, in reply.   Common law provisions declare the contract null.   Though consummated, it will not interfere: but the present suit is, in fact, to enforce the contract, and make us pay under it, though contrary to law.   The principle is, that courts of justice, in cases like the present, will not aid either party, but leave them where they are. 1 Pow. on Cont. 176.

THOMPSON, J. delivered the opinion of the court.   We think the plaintiff's demand cannot be supported.   Although the case is somewhat obscurely drawn, we assume, *as facts admitted*, that the claim possessed by the testator, Pitkin, to the township of land in Luzerne county, in Pennsylva- nia, was nothing more than what is usually called the Con- necticut claim, and that there was an adverse possession under the Pennsylvania title, at the time of the sale made to Maxwell.   In this we are warranted, because [*149]     the counsel on the argument *have so considered the case.   Under this statement, the sale to Max- well was illegal, and would fall under the denomination of maintenance.   This court have gone the length of saying they will judicially recognize the situation of that county, and will not enforce contracts relative to the sale of the Connecticut claim.   If the sale by Pitkin would have been illegal, we are unable to discover how it could be legalized by his agent, or broker.   It is too salutary and well settled a principle to be in any measure infringed, that courts of justice ought not to assist an illegal transaction in any

respect. To sustain the present action, would be in some degree ratifying, countenancing and sanctioning an illegal contract. It is a first principle, and not to be touched, that a contract, in order to be binding, must be lawful. Whenever the consideration, which is the ground of the promise, or the promise, which is the effect, or consequence, of the consideration, is unlawful, the whole contract is void. In the present case, the object and consequence of the agreement was the sale of the pretended title. This being illegal the promise to divide the spoil was of course illegal, and not to be enforced. All contracts that have a fraudulent object in view, are void, both at law and in equity. It is also laid down by Powell, in his Treatise on Contracts, as an established principle, that all contracts are void that are of an unfair nature in respect to their influence on third persons, although otherwise as between the parties to them; because if their object be to impose on third persons, the parties to them cannot have remedy at law, or in equity, for they are immoral. If the consideration money for this pretended claim had been paid to the plaintiff, neither a court of law, or equity, would have aided the defendant in recovering it from him. This is, therefore, a case to which the maxim *melior est conditio possidentis* must be applied, and judgment as in case of nonsuit entered.

LIVINGSTON, J. I cannot concur in the judgment which has been just delivered: there is no difference among us as to the general rule; but, in my opinion, the facts here are not such as to call for its application to this case. The defence is of the most unconscientious nature. The defendant admits he has received a large sum for the plaintiff, *but refuses to refund, because the contract on   [*150] which it was paid, although for his benefit, and made at his instance, was illegal: the maxim of " *melior est conditio possidentis*" is too well settled to be now shaken, although it may well be doubted, whether it was originally intended to apply to any other cases than where the party

in possession was regarded as owner of the property, until a better title were shown in another.   Thus far the rule is salutary, inasmuch, as it gives to possession a proper value and will not permit its being lightly disturbed : but it has certainly been extended to other cases, and if the contract which forms the basis of this demand be illegal, or if the plaintiff assisted in imposing on a third person, perhaps he ought not to recover.   But from nothing in this case can it be inferred that this contract was illegal, or that any fraud has been practised on Maxwell ; it is altogether silent as to the laws of Pennsylvania, where the land lies ; and, were it otherwise, it might be a question, how far, in this action, we could take notice of them, to render invalid the contract between these parties.   For aught, therefore, that appears, nothing has been done contrary to the laws of that commonwealth, nor has Maxwell been imposed on. He may at the time have been in possession of the lands under Pennsylvania, and have purchased the Connecticut claim, as was lawful for him to do, to quiet his title, or he may now hold the land under Pitkin.[1]   In either case, he has received value for the money he paid, and cannot be viewed as an injured person.   This presumption is confirmed, by the circumstance of his having paid so large a proportion of the notes which he gave.   It not appearing, then, that the contract between Pitkin and Maxwell is illegal, nor that the latter has been deceived, or defrauded, and the defence being of a kind not entitled to much countenance, I think the plaintiff should have judgment.

Judgment of nonsuit.

[1] See *Jackson* v. *Todd*, p. 187, *post.*