## HUNT AND OTHERS *against* KNICKERBACKER.

THIS was an action on the case. The declaration con-tained three counts. The first count stated, that the plain-tiffs were managers of a certain lottery, allowed and established by the legislature of the state of *Connecticut*, in *May*, 1804, &c. (describing the name and object of the lottery;) that the plaintiffs, on the 16th *June*, 1806, were possessed of a large number of tickets in the third class of the said lottery, which was legally established by the plaintiffs, as managers ; and according to the scheme of the said lottery, the price of the tickets was four dollars each, at which price all the tickets in that class were sold; and the plaintiffs averred, that the tickets were well worth four dollars each, &c. and that on, &c. the plaintiffs at *Poughkeepsie*, in the county of *Dutchess*, delivered to the defendant, at his special instance and request, 112 tickets, in the third class of the said lottery, from number 375, to number 469, inclusive, to sell for the said plaintiffs at four dollars, on a commission of 2 1-2 per cent. and to return those tickets to the plain-tiffs, on demand, which the defendant should not sell ; and that the defendant then and there received the said 112 tickets of the plaintiffs, and in consideration thereof, and of the sum of 2 1-2 per cent. on the amount of those tickets which the defendant should sell, the defendant

*No action can be maintained on a contract made for the sale of tickets in a lottery, not authorized by the legislature of this state.*

undertook, and to the plaintiffs promised, to sell the said tickets for the plaintiffs, if the same should be saleable, at four dollars each, and to return those of the said tickets to the plaintiffs, which the defendant should not sell ; and the plaintiffs averred, that the defendant under-took, and promised to return the tickets not sold, in a reasonable time, on demand, &c.

The second count stated, that the plaintiffs being in possession of 112 tickets, in the third class of a certain lottery, &c. on the 16th *June*, 1804, at *Poughkeepsie*, and at the special instance and request of the defendant, delivered to him the said 112 tickets, to be sold, &c. and the defendant, in consideration, &c. undertook to sell the tickets, at four dollars each, and to return to the plaintiffs, in a reasonable time, on demand, such of the tickets as were not sold, retaining his commission, &c.

The third count, was for money had and received, to the plaintiffs' use.

Plea, the general issue.

The cause was tried at the *Dutchess* circuit, in *August*, 1807. At the trial, the plaintiffs proved, that they were appointed managers of the lottery in question, and that the price of the tickets in the third class, were four dollars each. The drawing commenced about the 21st *April*, 1807, and was finished about the 1st *July*, follow-ing. About the time of the commencement of the drawing, a number of persons, associated together for the purpose, purchased of the managers all the tickets then on hand and unsold, at four dollars each, with the usual deduction of 2 1-2 per cent. the number of which tickets so purchased did not appear. The scheme of the lottery, as established, was also proved.

The plaintiffs then offered the following letter of the defendant, to *Hunt*, one of the plaintiffs, which was ob-jected to, but admitted by the judge.

"  *Red Hook Landing*, *Sept.* 7, 1807.

"  Sir,

"  On the 24th *April* last, a letter was handed to me, which was directed to *Knickerbacker* and *Hamlin*, giving notice that the *Canaan* lottery, was to commence drawing on the 21st *April*, and requesting the tickets unsold, to be returned by mail ; but as you hold my receipt for the tickets you left with me, I could not with propriety send them, unless I had my receipt, or a letter directed to me. I however, seeing that the lottery had, three days since, commenced drawing, immediately put up the tickets, and wrote you, but there has no letter come since. I was told that you made a practice of calling on those with whom you left tickets, and that you would no doubt call on me, and furnish a list of prizes. I should be glad if you would soon call or send."

The plaintiffs also produced and proved, the act of the legislature of the state of *Connecticut*, authorizing the lottery, and appointing the plaintiffs as managers, who were required to give a bond as security, and to take an oath for the faithful discharge of their trust; but whether they had given the bond, or taken the oath, did not appear.

In *April*, 1808, *Canfield*, one of the plaintiffs, called on the defendant, and demanded payment for all the tickets, which the defendant refused. The defendant offered to return the tickets unsold, being 21 or 22, which *Canfield* refused to accept. The defendant admitted that he had received a letter from *Hunt*, one of the plaintiffs, addressed to *Knickerbacker* and *Hamlin*, which letter was produced, and is as follows :

"  *Canaan*, 17th *April*, 1807.

"  Gentlemen,

"  You are requested to return what tickets of the third class of the *Canaan* lottery, by the mail this week, as

are unsold; as the lottery begins drawing on *Tuesday*, the 21st instant."

It was proved, that on the receipt of this letter, *Knickerbacker*, requested one *Davis* to inform the plaintiffs, that the tickets were not sold, and that he was ready to deliver them at any time when they should send him the receipt given for the tickets.

The judge charged the jury, that under the circumstances of the case, the letter written and sent by *Hunt*, to *Knickerbacker* and *Hamlin*, was a sufficient request, to render it obligatory on the defendant, to return the tickets by mail ; that as he had not done so, he had made himself liable, in this action, for the whole number of tickets ; and that the plaintiffs were entitled to recover for the 112 tickets, at four dollars each, with interest, after the time when the prizes in the lottery were payable, deducting the commission of 2 1-2 per cent. and the jury found a verdict accordingly.

It was agreed, that if the court should be of opinion, that the plaintiffs cannot recover in this form of action ; or because the contract was illegal, then a nonsuit was to be entered ; but if the court should be of opinion that the jury were misdirected, then a new trial was to be granted.

*Evertson*, for the defendant. 1. The plaintiffs should have brought *trover*, and not an action to recover damages, for the breach of the agreement. An action for the tickets, as sold and delivered, would also lie.* If the plaintiffs recover the value of the tickets, in the present form of action, the property in them will still remain unchanged ; and the managers of the lottery may bring an action to recover the tickets themselves. This is a case of a mere deposit ; and there is no advantage in this form of action, which could not be obtained by an action of trover, or for tickets sold and delivered.

* *Peake's N.P.*
56.

The boundaries of the different forms of action should be carefully observed.*

2. The contract was illegal, being against the intent and spirit of the act to prevent private lotteries.† The declaration alleges, that the defendant did not *sell* or return the tickets. It is a contract for the sale of tickets in this state, in a lottery not authorized by the legislature. Where the object of the contract is unlawful, no action can be maintained upon it.‡ Nor will the action be supported, if the object of the contract is against public policy.§ The mischief intended to be prevented by the statute, will exist, in as great a degree, if tickets in lotteries established in other states are allowed to be sold here, as if private lotteries were created by our own citizens.

3. The receipt produced did not support the averment in the declaration ; nor was it proved who were the managers of the lottery. The plaintiffs having made the averment voluntarily, are bound to prove it, and the receipt does not excuse the necessity of such proof.¶

Again, there was no legal demand of the tickets ; and the refusal of the defendant was, therefore, justifiable. The letter was addressed to *Knickerbacker* and *Hamlin*, not to the defendant alone, and was signed by *Russel*, without stating that he was manager, or that he had any authority to receive the tickets.**

Then, as to the amount of damages. The value of the tickets in *Connecticut*, is not the true measure of damages. The question is, what have the plaintiffs lost by not having their tickets returned? Shall the plaintiffs be allowed to recover the value of the tickets, and be also entitled to receive all the prizes those tickets may have drawn in the state of *Connecticut ?* The only just measure of damages would be to deduct the price of the tickets from the amount of the prizes drawn and received.

*Ruggles*, contra. 1. The action well lies in its present form. There can be no reasonable objection to

ALBANY,
Feb. 1810.

HUNT
v.
KNICKER-
BACKER.

*1 *Bos.*and *Pull.*
476. 1 *H.Black.*
243. 6 *Term Rep.*
129. *Gowp.* 414.
† *L.N.Y.* 6 sess.
c. 12. s. 1, 2, 3.
‡ 2 *Caines*, 147.
§ 4 *Johns. Rep.*
426. 5 *Term Rep.*
242.599. 3 *Term
Rep.*454. *Cowp*
344.

¶ *Peake's N.P*
51. 237.

** 1 *Esp.*85.115

ALBANY,
Feb. 1810.

HUNT
v.
KNICKER-
BACKER.

*Doug. 137.
Bull. N. P. 96.
Salk. 9.

† 10 and 11. W.
III. c. 17.

‡ Peake's N.P.
51.

§ W. Black.
1073. Cowp. 790.
1 Hen. Black.
65.

stating the ground of the action more fully than it would be in trover. The defendant undertook to return the tickets unsold ; and the action is to recover damages for the breach of that undertaking. The value of the tickets was fixed, by the receipt, at 4 dollars. If goods are entrusted to a person to be sold, at a fixed price, or returned, if not sold, after the lapse of a reasonable time, and he refuses to return them on demand, an action of assumpsit lies.* The letter to *Knickerbacker* and *Hamlin* was a sufficient notice and request to return the tickets.

2. The act to prevent private lotteries, does not apply to the sale of tickets in lotteries, established in other states. Our act declares private lotteries to be public nuisances ; but a lottery in another state cannot be a nuisance here. Again, the judges are directed expressly to charge grand juries to inquire of offences against the act, and to indict the offenders. This cannot apply to lotteries in other states. Besides, this was a public lottery in *Connecticut*, established by the legislature of that state.

There is a similar statute in *England*,† against private lotteries, yet it has never been suggested, that a sale of tickets in an *Irish* lottery, established by the *Irish* parliament, was not legal.‡ Actions for wagers are maintainable, if not against public policy. Money paid for insuring lottery tickets, though such insurance is illegal, may be recovered back from the keeper of the lottery office.§ The parties are not considered as *in pari delicto.* The act is to be taken strictly, according to its letter, and not extended further. The defendant is very conscientious, not to return the tickets, because the sale of them is illegal ; yet his conscience allows him to keep the money. But he stands in a similar situation with a lottery-office keeper in *England ;* and the courts there, though the insurance is illegal, will not allow the keeper of such insurance office, to retain the money.

THOMPSON, J. delivered the opinion of the court. One question made on the argument in this case, relates to the legality of the contract, upon which the action is founded, and goes to the whole merits of the plaintiff's claim. The cause of action arises out of a receipt given by the defendant, on the 16th day of *June*, 1806, by which he acknowledges to have received, 112 tickets in the *Canaan* meeting-house lottery, to sell at four dollars each, on a commission of two and a half per cent. and those not sold, to be returned. Both from the declaration and testimony, it is manifest, the tickets were delivered and received, for the purpose of being sold in this state. Our act (*Rev. Laws*, v.1. 35.) declares, that every lottery, other than such as shall be authorized by the legislature, shall be deemed a common and public nuisance; and the selling or purchasing any ticket or tickets of any lottery, thereby prohibited, subjects the offender, on conviction, to the payment of ten pounds, for every such offence. Every lottery not authorized by the legislature, is a private lottery within the purview of this act. The mischief intended to be guarded against, appears from the preamble. " Whereas experience has proved, that private lotteries, occasion idleness and dissipation, and have been productive of frauds and impositions." Although the tickets in question, were in a lottery established in the state of *Connecticut*, yet the sale of them here, would be productive of many of the mischiefs contemplated by the legislature. The special exception as to lotteries established under the authority of the *United States*, affords a pretty strong inference, that the prohibition was intended to extend to lotteries established in sister states. It is, at least, against the policy of our statute, to permit the sale of such tickets.

If the contract be illegal, or against the policy and spirit of the act, courts of justice ought not to lend their aid to enforce it. The present action is founded upon the contract, and goes in affirmance of it; and is

not brought to recover back the tickets, or the money ac-
tually received on the sale of them. The plaintiffs claimed
and have recovered the full value of the tickets, at four
dollars each, on the ground that the defendant had made
them his own by not returning them pursuant to his con-
tract. It is a general rule of law, that all contracts or
agreements which have for their object any thing which
is repugnant to the general policy of the common law,
or contrary to the provisions of any statute, are void,
(1 *Comyn on Con.* 30.) and not to be enforced. In the case
of *Holman* v. *Johnson*, (*Cowp.* 343.) Lord *Mansfield*
says, the objection that a contract is immoral or illegal,
as between plaintiff and defendant, sounds at all times
very ill in the mouth of the defendant. It is not, how-
ever, for his sake, that the objection is ever allowed, but
it is founded in general principles of policy ; and when-
ever from the plaintiff's own stating, or otherwise, the
cause of action appears to arise from the transgression
of a positive law of the country, he has no right to be
assisted. The same principle has been fully recognised
by this court, in the case of *Belding* v. *Pitkin.* (2 *Caines*,
149.) It is there said to be a principle too salutary and
well settled, to be in any measure infringed, that courts
of justice ought not to assist an illegal transaction in any
respect. It is considered in the *English* courts, to be
illegal, if not immoral, in the subjects of one country to
enter into a contract with the subjects of another, to as-
sist the latter, in defrauding the revenue laws of his
country ; (5 *Term Rep.* 600.) and they will not sustain
actions upon contracts entered into with that view. A
contract, which in its execution, contravenes the policy
and spirit of a statute, is equally void, as if made against
its positive provisions. (3 *Term Rep.* 23.) The pream-
ble and provisions of our statute, point out, very clearly,
that the intention of the legislature was to prohibit the
establishment of any lottery, or the sale of any tickets not
specifically sanctioned by the legal authority of this state.

No case, I believe, can be found, where an action has been sustained, which goes in affirmance of an illegal contract; and where the object of it is to enforce the performance of an engagement prohibited by law. Wherever an action has been sustained against a party, to prevent him from retaining the benefit derived from an unlawful act, the action proceeds in disaffirmance of the contract; and, instead of endeavouring to enforce it, presumes it to be void. (2 *Black. Rep.* 1073. *Cowp.* 197. 790. 1 *Hen. Black.* 65.

Without, therefore, examining the other questions made on the argument, I am of opinion, that the present action cannot be sustained; and that pursuant to the stipulation in the case, judgment of nonsuit must be entered.

Judgment of nonsuit.