Lipscomb, J.
This case was urged at the last term of the court, and has been held under advisement.
A great many points have been made and discussed by counsel, but the most important and the one to which we shall confine our attention is the legality of the contract on which a specific performance was decreed.
The appellants seek to reverse the judgment of the court below on the ground that the contract, at the time it was entered into, was contrary to law; that the law forbid the alienation of the land — the subject of the contract; and we are referred to the 19th article of decree No. 190 of the congress of Ooahuila and Texas, published on the 28th of April, 1832. It is in the following words, viz.:
“No new settler, Mexican or foreigner, shall under any title or pretense sell or alienate the land or water that falls to his share until after six years from the time of taking possession.” Laws of Coahuila and Texas, 191.
*(533) It is believed to be a rule of universal application that to undertake to do an act forbidden by the law of the place where it is to be done is an invalid agreement, and imposes no legal obligation. There is a moral obligation in the absence of a penalty to obey the law. Courts are organized under the law and are required to administer it, and it would seem to be an anomaly were they so far to sanction its violation as to give effect to a contract forbidden by the very law that they are bound to respect and enforce. In the 5th Partidas, title 11, law 28, it is said, “ that every contract made contrary to law or to good morals, though under a penalty of an oath, ought not to be observed,” thus holding the obligation not to violate the law paramount to that imposed by an oath. By the Code Napoleon, one of the conditions essential to the validity of every contract is lawful cause, p. 304. The ' cause is unlawful when it is prohibited by law — when it is contrary to good morals or to public policy. Id. p. 309; same doctrine, 1 Pothier, 62.
At common law, whatever is contrary to public policy invalidates a contract — trading with an alien enemy is against public policy and renders the contract on such traffic void. Mr. Chitty says “ that not only is an alien enemy unable to sue in this country on a contract made by him, but the contract is not available, even against him, in. favor of an Englishman, though made abroad; and being void if made during the war, the return of peace does not afford the latter any ground of action, but the right of action is only suspended until the return of peace, if the contract was made before the commencement of the war.” Chit, on Contracts, 3d Am. ed. 51. The principle to be deduced from the authority last cited is, that for certain causes the enforcement of a contract may be suspended without invalidating the contract; and, further, that if the impediments to contracting exist at the time it is entered into, it invalidates the contract, even after the removal of the impediment.
It seems that a distinction was once made in the English courts, when the law only forbid the doing an act, and when it imposed a penalty for doing it. A contract in violation of the first was not valid, whilst the latter did not destroy the obligation by contracting to do the act forbidden by law under a penalty. But the current of authority is now destructive of any such distinction — holding all contracts against law alike invalid. Chit. Con. p. 230-1; 5 Term, 242; 5 B. & A. 335. My object in referring to the last authorities is to show that in the English courts there is no longer any distinction between a law merely forbidding an act and one forbidding under a penalty. The same authority will show that the distinction once *(534) attempted between things mala jprohibita and mala in se cannot be sustained — that either invalidates a contract.
In the supreme court of the United States in the case of Craig et al. v. The State of Missouri, 4 Pet. 410, the doctrine of the invalidity of a contract contrary to law was fully and ably discussed. The question arose on a suit brought by the state of Missouri on a note given by Craig et al. The defense was, that the consideration for which the note was given was loan office certificates, loaned by the state. If the certificate issued at the loan office was a bill of credit, the act of the legislature creating the office and authorizing the emission of the certificates as a loan was in contravention of a provision of the constitution of the United States, and void.
Chief Justice Marshall, after discussing the character of the certificates issued, and arriving at the conclusion that they were bills of credit, proceeds, “The certificates for'which this note was given, being in truth Mils of credit, in the sense of the constitution, we are brought to the inquiry — is the note valid of which they form the consideration? It has been long settled that a promise made in consideration of an act which is forbidden by law is void. It will not be questioned that an act forbidden by the constitution of the United States, which is the supreme law, is against law. The Chief Justice refers to the case of the Springfield Bank v. Merrick et al. 14 Mass. 322, and Hunt v. Knickerbocker, 5 Johns. 327, as authorities of state courts of the highest respectability, in support of the same doctrine, and adds, that it never has been doubted that a note given on a consideration which is prohibited by law is void.
The case of McElyea v. Hayter, in 2 Porter, 145, in its features, presents a strong resemblance to the case before us. It was an action to try titles. The land in controversy had been entered by McElyea under the pre-emption law of congress, passed on the 29th day of May, 1830, which expressly inhibited all assignments and transfers of the right of pre-emption prior to the issuance of the patent. Previous to the issuance of the patent to McElyea, he executed a power of attorney to one Campbell, authorizing him to convey the land to Hayter when the patent should issue. Campbell, in pursuance of the power, executed the conveyance for the land, and this action was brought to recover possession. The title was not to be made until after the issuance of the patent, but the contract to convey and the power of attorney was anterior and at a time when alienation was forbidden. The court held the conveyance void. Chief Justice Saf-fold says: “The principle is not necessarily the same as if, instead of this power, a bond for title had been executed at the same time, and *(535) McElyea had afterwards, when in possession of the patent, executed the deed pursuant to the previous void agreement. . In this latter ease the subsequent execution of the conveyance would have constituted a new contract when there was no restriction against it; but if suit were brought on such bond to recover the penalty or damages for the breach, it is clear that no such recovery could be had because of the illegality of the contract with reference to the subject-matter at the time when made; ” and he cites the case of Armstrong v. Toler, 11 Wheat. 258, as sustaining the correctness of his views.
In comparing the above case with the one before us, there appears to me to be a most striking similarity of features. In the Alabama case the power to sell was not to be executed until the patent had issued, when the patentee well might do so, agreeably to law. In the case before ns the deed was not to be executed until the time prescribed by law had elapsed. We have seen that by the decree No. 190, alienation was expressly forbidden until the expiration of six years from going into the possession of the land conceded.
The- case of a contract, forbidden by law when it is entered into but the law afterwards repealed, is not perceived to stand on a footing different, in principle, from the contract on which the suit under consideration was instituted — both are contrary to law at the time of their being entered into; the former ceases to be so by the repeal of the law; the last, by the expiration of the time prescribed. On the effect of a repeal of a statute on a contract entered into in contravention of it before such repeal, we have numerous adjudicated cases of the highest authority. Judge Story, after treating of illegal contracts on account of their being contrary to law, proceeds: “And it will make no difference that the laws have been since repealed, or that the war has since ceased; for the contract being clearly in fraud, of the Imo existing at the time, the execution of it ought not to be enforced by the courts of the country whose laws it was intended to evade.” Story Confl. 205. The same doctrine is found in Hannah v. Eve, 3 Cranch, 242, and in 14 Mass. 242, cited above. In this last case Chief Justice Parker remarks: “The subsequent repeal of a statute can have no effect upon a contract made while it was in force.
As well might a contract made for the purpose of trade with an enemy during a war be purged of its illegality by the return of peace. The supreme court of Florida, in a case of usury, after the statute had been repealed, have asserted the same doctrine: That if the contract be on a usurious consideration at the time it was entered into, the subsequent repeal of the law cannot wipe out the taint of usury, Mitchell v. Doggett, 1 Fla. No. 2, 356.
*(536) It is frequently a most perplexing question to determine whether a contract is against public policy, when it is not forbidden by express law, but when it is so forbidden there is no such difficulty presented.
To apply the principles we have examined, and which seem to be common to all countries, no one can for a moment doubt that the contract on which the suit xxnder consideration was instituted in the court below was foi’bidden by the law then in force, and the fact that it was not to be executed until the legal impediment was removed can impart to it no validity. It was not at the time a legal subject of contract of alienation, and the legal impediment to the subject matter of the contract presented as strong a ground of objection to its validity as the disability of one of the parties to contract — and in principle it would be as objectionable as to hold one, who contracted during minority to convey after coming of age, to performance.
The fact that the parties to the illegal contract mutually went into the enjoyment of the consideration that passed and made considei’able improvements can be of no influence in this suit. The petition states no facts and makes no averments that would admit of, or let in proof by which a confirmation or new contract was entered into, after the legal disability had been removed. The suit is founded on the contract, admitting by its terms that it is contrary to law. The petition shows as much and asks to have this contract, so admitted to be contrary to law at th'e time it was made, carried into specific execution.
The plaintiffs below may have rights founded on the strongest equity; and if they have, such rights would be protected if fairly presented to the court. The naked fact of a long continued possession without interruption or adverse claim; acts of ownership and assertion of right within the knowledge or presence of the adverse party,, have been held to be grounds on which a title would be presumed. If the suit bad been brought to quiet the complainants in the enjoyment, and such a state of facts presented as would raise a reasonable-presumption of a confirmation, or would constitute a new and a distinct contract afterwards, when there was no legal restriction, the powers of the court are sufficiently ample to afford relief.
But all such considerations are excluded in the present suit, and we have no hesitation in deciding that the contract sued on and sought to be enforced is illegal and void.
The judgment of the district court of Colorado county is in all things reversed, and the cause directed to be dismissed.