Ledyard v. Brown.

W. J. LEDYARD V. J. H. BROWN AND OTHERS.

In a conflict between two grants issued to colonists, one in 1832 by the commissioner of the colony of DeWitt, and the other in 1835 by the commissioner of the colony of Austin and Williams, which arose from the uncertainty and confusion of the boundary between the colonies, the elder grant will prevail; though it may afterwards appear that the elder grant was located a few miles within the limits of the colony of Austin and Williams.

See this case for instructions of the court below, which were held to have properly presented the rule laid down in Hamilton v. Menifee, 11 Texas Reports, 718.

Contracts by colonists to sell the lands embraced in the above named grants before the expiration of six years after their issuance, and to make conveyances therefor so soon as the law would permit, are void. The case of Hunt v. Robertson, 1 Tex. R., 748, and others, cited and approved.

It has been repeatedly decided by this court that the heirs of the grantee cannot enforce the legal title against parties claiming under such a contract without refunding the consideration received by their ancestor.

The fact that land has not been assessed does not relieve a party from proving that the taxes thereon have been paid, in support of the plea of limitation of five years.

It is the settled practice that where a verdict is found upon special issues alone, that the court cannot look beyond them to any fact apparent in the record in aid of its judgment.

Where a defendant filed a cross-bill, making his co-defendants parties defendant, such co-defendants are not required to plead the statute of limitations to entitle them to show that they were in possession under the superior title, and thus repel the conclusion of title in the party filing the cross-bill by a continued peaceable possession.

In such a case, a judgment by default against some of the co-defendants in a former suit by the party filing such cross-bill for the same land, does not necessarily entitle the party filing such cross-bill to a judgment against such co-defendants in the same suit;—the former still pending, the interlocutory judgment is still within the control of the court, and may be set aside for good cause, and the parties permitted to answer.

APPEAL from Bexar.    Tried below before the Hon. George W. Smith.

This suit was brought on the 8th day of March, 1855, by John Henry Brown, Rufus E. Brown, Margaret A. and Russel Brown,

heirs of Henry S. Brown, against James Breeding, C. C. DeWitt, Green Penn, Michael Lomax, James Clemmons, Lewis Schulenberg, L. V. Criswell, James R. Burns, Eliza Gibson, John M. and George W. Short, John H. Meicke and William J. Ledyard, for an undivided half interest of a league of land, to have their title quieted, and for partition. On the 15th day of April, 1825, Green DeWitt entered into a colony contract with the Mexican government. By this contract the colony was to commence on the right bank of the Lavaca, contiguous to Austin's colony, and ascend the Lavaca to the upper road going from Bexar to Nacogdoches. On the 25th day of February, 1831, Austin and Williams entered into a colony contract with the same government, the boundaries of which were to commence on the left margin of the Lavaca river, at a point ten leagues from the coast, following said river up the most westerly head, and thence to run in a direct line north-west, to the road leading from Bexar to Nacogdoches. On the 12th day of September, 1832, George W. Cottle received a grant of a league of land as a colonist of DeWitt. On the 10th day of October, 1835, Jesse Richards obtained a grant of a league of land as a colonist of Austin and Williams. These two leagues conflicted, and out of this conflict the controversy in this suit arose.

There were two sets of claimants; one set claimed under the Cottle grant, the other under the Richards grant. John Henry Brown, Margaret Anne and Russell Brown, the plaintiffs, and Eliza Gibson, John M. Short, James Breeding, John H. Meicke, Green Penn, Michael Lomax, James Clemmons, Lewis Schulenberg, Leroy V. Criswell and James R. Burns, eleven of the defendants, claimed under the Cottle grant. W. J. Ledyard, one of the defendants, derived his title to the land in controversy from the Richards' grant. It does not appear under whom the remaining defendant, C. C. DeWitt, claimed, no evidence having been introduced in support of his claim. Eliza Gibson, John M. and George W. Short, claimed title to the whole of the Cottle league, as heirs-at-law of the grantee, George W. Cottle. The plaintiffs claimed an undivided half of the Cottle league, under and by virtue of a contract entered into between their ancestor, Henry

S. Brown, and the grantee, George W. Cottle. Breeding, Meicke, Penn, Lomax, Clemmons, Schulenberg, Criswell and Burns claimed portions of the Cottle league under R. J. Townes, who had purchased the interest of Brown at a sale made by his administrator.

Ledyard asserted title to the entire interest in the Richards league, and exhibited a chain of transfer from the grantee, Richards, down to him. It appears from the statement of facts that Love, Dancy and McKinney had set up titles to an interest in the Richards grant; that a compromise had been effected between them and Ledyard, which resulted in a partition of the league between them, each executing to the other deeds of release for respective portions of the others. The portions deeded to Love, Dancy and McKinney did not come in conflict with the Cottle grant.

The bond from Cottle to Brown was executed on the 10th day of July, 1832, and recited that Cottle was entitled to receive lands under the colonization law of the 24th of March, 1825, but was unable to realize said lands for want of money to pay the necessary fees of the surveyor and commissioner, and was in danger of losing his right to said lands, inasmuch as the colony was soon to be closed; that Henry S. Brown had furnished the funds necessary to secure said lands. The bond then continued as follows: "Now for and in consideration of the funds so furnished, I hereby bargain, sell and convey unto the said Henry S. Brown one-half of all lands which I may obtain through his intervention and assistance, and which may be due in virtue of said law; and I hereby bind myself, my heirs and successors unto the aforesaid Henry S. Brown in the penal sum of three thousand dollars, good and lawful money of the province of Mexico, to execute a good and valid title to the same. Said lands have been selected on the waters of Peach creek and Lavaca, better known and called by the name of Cedar Spring league, about ten leagues from Gonzales, and designated in the survey of the colony as No. 5. The conditions of the above obligation are as follows: the aforementioned Henry S. Brown shall pay all necessary expenses whatever in order to put me in full and complete possession of the land. The land shall then be divided in the most equitable manner, so that each one may have an equal quantity of wood,

water and land of good and bad quality. The said Henry S. Brown, having the right to choose first; and on his complying fully with the aforesaid stipulations, I hereby further obligate myself to convey unto the said Brown the one-half of the above named lands, so soon as I may be authorized legally to do it in good faith, and without violation of the laws; and I specially take upon myself the charge of settling said lands and cultivating them within the six years prescribed by law."

Brown complied with the conditions contained in the bond on his part, and the grant was issued to Cottle on the 12th day of September, 1832.

The petition of plaintiffs claiming as heirs of Henry S. Brown, set out this bond; asserted their right to one-half of the league under it; attacked the titles of the defendants who claimed under Townes and the Richards grant; prayed that John and George W. Short have a guardian *ad litem* appointed to represent their interest; that the Cottle league be equally divided between Eliza Gibson and plaintiffs; for judgment against the other defendants for damages, and for writ of possession.

Criswell and Schulenberg filed a general demurrer; set up title in themselves to portions of the land in controversy, and pleaded the general denial.   Eliza Gibson pleaded "not guilty," and that the Cottle league was the property of herself and of the minor heirs of Melezina Short, deceased.

Ledyard pleaded general demurrer and general denial, and specially answering, set up title in himself, and alleged that the Cottle grant was located within the limits of Austin's Colony, when Cottle was a colonist of De Witt; that so far as the Cottle grant conflicted with the Richards grant, it was null and void.

James Breeding demurred and pleaded "not guilty," and alleged that the heirs of John O. Bar were interested, and prayed that they be made parties.

The marriage of Eliza Gibson and James Byrd, and the death of the latter, were suggested. Her subsequent marriage with John Y. Headstream, was suggested, and the latter made a party. Meicke demurred and pleaded "not guilty."

On the 19th of May, 1858, Ledyard filed an "amended an-

swer and cross bill," in which he asserted title to all the land in controversy; reiterated the allegations as to the conflict between the Cottle and Richards grants; and alleged a conflict between the Richards grant, claimed by him, and the land claimed by Penn, Lomax, Clemmons, De Witt, Eliza Gibson, and the heirs of Melezina Short, but none as to the other parties to the suit.    He further set up the limitations of three, five and ten years, and prayed for judgment against the plaintiffs, and against the defendants claiming adversely to him, and that his title be quieted.    He further pleaded in bar "a judgment by default by him recovered in a suit now in said court pending, wherein he is plaintiff and De Witt and others are defendants."    In a subsequent amendment, he pleaded improvements made in good faith, and averred that the petition in the suit against De Witt and others, was filed on the 20th day of January, 1855, and claimed that no limitation could run against him from the filing of the same, nor from the filing of his cross bill.

By amendments, Penn, Lomax, Clemmons, Meicke, Criswell and Schulenberg, set up improvements made in good faith.    Lomax, Clemmons, Meicke and De Witt, adopted their answers to the original petition as answers to the cross bill of Ledyard.

B. Shropshire, the guardian *ad litem* of the minor heirs of Melezina Short, formerly Cottle, pleaded "not guilty," denied the sale from their ancestor Cottle to Brown; alleged that the bond if executed, was null and void; claimed that the title to one-half of the Cottle league, descended to them as the only children and heirs of Melezina Short; also claimed one-half of the half of the league conveyed by Cottle to his wife, and prayed judgment accordingly.

The plaintiffs read in evidence copies of the grant to G. W. Cottle, and of the bond from Cottle to Brown, the deed from George W. Cottle to Eliza Cottle his wife, for one-half of the Cottle league; proved their heirship, and that George W. Cottle had repeatedly recognized the sale to H. S. Brown; that he H. S. Brown, had "cleared out the title to the Cottle league," and paid the expenses therefor.

Ledyard introduced in evidence copies of the colonial contracts

of De Witt, and of Austin & Williams, and of the Richards grant; also, conveyances for one-half of the Richards league from the grantee down to him, to wit: from Richards to Davenport; from Davenport to Duncan; from the latter to Ledyard; also, deeds for the whole interest from the grantee down to him, to wit: from Richards to Walker, from Walker to Barns, and from the latter to Ledyard. In 1841, one-half interest in the Richards league was sold for taxes as the property of Davenport, and purchased by Merriwether. In 1847, the interest of Merriwether was sold at execution sale and purchased by C. J. Ward, who deeded his interest to Ledyard the 22d day of April, 1852. These conveyances were also read by Ledyard.

C. J. Ward for Ledyard, testified, that he purchased the half of the Richards league at sheriff's sale, sold as the property of Merriwether in March, 1848; that during the same year, he put tenants in possession, who made improvements, built houses, and put about forty acres in cultivation, and continued to live on and cultivate the land, until he sold to Ledyard on the 20th day of April, 1852, and continued after that time as Ledyard's tenants; that he, witness, paid taxes on the land from 1848 to 1852 inclusive. The tenants corroborated the testimony of Ward as to possession, and further proved that they continued in possession as tenants of Ledyard up to trial. Deeds of lease from Ward and Ledyard to these tenants were also read.

Ledyard also proved that the land in controversy was located within the limits of the colony of Austin & Williams, and that about three-eighths of the Richards league lapped over on the Cottle league. The portions of the Cottle league claimed by his co-defendants, who were made defendants by his cross bill, were included within these three-eighths of the Richards league, thus conflicting with the Cottle league. It was also in proof that neither Ward nor Ledyard rendered any of the Richards league for taxation for the years 1852–'53–'54. It was also admitted that the land claimed by Ledyard only conflicted with the land claimed by his co-defendants Penn, C. C. De Witt and Eliza Headstream.

Ledyard had brought suit against Penn, De Witt, Eliza Gibson, (afterwards Headstream) for the land in controversy, and

obtained a judgment by default against Eliza Gibson (or Head-stream) and De Witt, and also Lomax, but it being ascertained that the lands claimed by Ledyard and Lomax did not conflict, he claimed nothing as to Lomax. In order to shorten litigation, it was agreed that the case of Ledyard against Penn, De Witt and others, should stand continued and await the result of this suit; that Ledyard might read the judgment by default in evidence in this suit, and should have all the rights obtained thereby. In pursuance of this agreement, Ledyard read this judgment by default in evidence.

Cottle, at his death, left his wife Eliza and his daughter Melezina surviving him. Melezina married A. H. McIver, from whom she was divorced, and then married M. H. Short, by whom she had two children, John M. and George W. Short. She died before the institution of this suit, and her children, being minors, were represented by Shropshire as guardian *ad litem*. Eliza, the widow, married James Gibson, and afterwards John G. Headstream. She read in evidence the deed from her husband G. W. Cottle, for one-half interest, and a deed of release from her daughter Melezina and husband for their interest in the same half interest of the Cottle league.

The administrator of H. S. Brown, sold the half interest in the Cottle league, which he claimed under the bond from Cottle, and R. J. Townes became the purchaser. Townes sold to Benjamin, Edward and Gustavus Breeding. They divided the league with the widow of Cottle. Benjamin sold his interest to the defendant, Penn, who went into possession in January or February, 1853. Edward and Gus. Breeding conveyed a part of their tract to the defendant Criswell. The balance of the tract was sold by them to G. M. T. Webb; he to M. P. Webb; he to the defendant Schulenberg. All these deeds were read in evidence. Copies of the proceedings had in the administration of H. S. Brown, were also read.

The following instructions were asked by Ledyard and refused by the court:

"None of the defendants to the cross-bill of Ledyard have pleaded the statute of limitations and therefore cannot avail them-

selves of any possession in their favor, even if they have shown any by the evidence.

"The party DeWitt can set up no claim against Ledyard, because he allowed a judgment by default to go against him, which has been read in evidence and Ledyard having shown a regular chain of transfer to him, must recover as to DeWitt.

" The non-assessment of taxes is no evidence that taxes have not been paid and the jury will disregard the assessment rolls offered in evidence."

The court charged the jury as follows: " 1. You are charged to find a verdict against the plaintiffs; for if they ever did have any claim by reason and in virtue of the bond given their father by Geo. W. Cottle to any part of the land sued for, the same was transferred and vested in R. J. Townes by the probate sale made in Brazoria county, and has passed down from him to those who may be holding under him, the said Townes.

" 2. You are charged, also, that the sale of the undivided half interest of said league made by Geo. W. Cottle to Henry S. Brown, the father of the plaintiffs, should be by you held binding on the minor children of Short and surviving widow of Cottle, and they as such in this suit will not be heard to assert that the said bond was void, because they have not offered to pay back the consideration paid by Henry S. Brown for this half of the league. In order that their demands of justice should be heard, they should first act the part of justice by placing Brown and those claiming under him in the condition that he (Brown) was in before the alleged void contract was made, such as paying back the purchase money paid by Brown, and as to this claim on their part, you should find a verdict against the minor children of Short, or rather the grandchildren of G. W. Cottle, and also against the widow of Cottle, so far as she claims as the survivor of G. W. Cottle; but her rights derived by the deed of gift made by Cottle will occupy a different position, and so far as her rights derived from the deed of gift, that do not conflict with the grant to Jesse Richards, you should find in her favor and those claiming under her, provided they have not been defeated by limitations as hereinafter defined.

"3. It appears that there is a conflict between the grant issued to Richards, dated the 10th day of October, 1835, and the one issued by the commissioner of the colony of DeWitt, dated 12th day of September, 1832. It is contended by Ledyard, who claims under the Richards grant, that the Cottle grant is void because it was situated without the limits of DeWitt's colony, and this will be a matter for you to determine, and if you are satisfied that the eastern line of DeWitt's colony, near this land, was well defined and known to the officers, who extended or issued the grant, and that the Cottle grant was situated without the colony, then you will find that this grant to Cottle was void, and find a verdict in favor of Ledyard for the land claimed by him.

"4. But if you are satisfied from the evidence in the case that the colonial limits of the two colonies conflicted; that this league is within that conflict of colonies, or that the eastern line of DeWitt's colony was not well defined or known to the commissioners, and that the location and survey of the Cottle grant without the limits of DeWitt's colony (if you believe it were so situated) was not caused by a wanton disregard and in violation of the law that controlled them, and that it was from an innocent mistake or want of knowledge of the said eastern line of said colony near this land, then you will find that the grant to Cottle is valid and is a superior title to the grant to Richards, because it is older, and you should find a verdict against Ledyard for what he claims under the Richards grant and conflicts with the Cottle grant, unless you are satisfied that he is protected by limitation.

"5. Upon the question of limitation, you are charged that if Ledyard, in person or by tenant or tenants, had for three years before the 20th day of January, 1855, been in the continued and adverse possession of the land claimed by him under his title as before set forth, then you should find a verdict in his favor for so much as he may have thus been in possession of. This possession must be shown to have been continuous and unbroken for at least three years before the 20th day of January, 1855, and after he, Ledyard, became the purchaser of the land. That is, the adverse possession of Ledyard in person or by tenants must have been under the title he owns continuous and unbroken for at least three years."

26*

An instruction under the statute of limitations of five years was also given, fixing the 20th day of January, 1855, as the time when the limitation ceased to run in favor of Ledyard.

Special issues having been submitted to the jury by the court, the findings were substantially as follows: "1st, against the plaintiffs; 2d, against Eliza Headstream, *alias* Gibson, *alias* Cottle; 3rd, that the eastern boundary line of DeWitt's colony on the 12th September, 1832, was uncertain and undefined, and conflicted with the colony of Austin and Williams; 4th, to the question, 'If you say that the lines of the colonies did most likely conflict, and that the Cottle grant was located outside of DeWitt's colony, state whether or not the eastern boundary line of DeWitt's colony was so uncertain and unknown to the officers of the colony as to induce them to honestly believe that it was within the limits of DeWitt's colony, and that they did not act from wanton disregard of the laws in locating the headright out of the limits of said colony?' they answered, 'They doubtless discharged their duties honestly and to the best of their ability;' 5th, Ledyard took and held possession of the land in controversy from the 20th August, 1852, to the 20th January, 1855, making two years and five months; 6th, neither Ward nor Ledyard paid taxes on the land."

Upon these findings, judgment was rendered that plaintiffs recover nothing; that John M. and George W. Short and Eliza Headstream recover nothing of plaintiffs or co-defendants; and that Ledyard recover nothing by his cross-bill. From which judgment Ledyard alone appealed. The heirs of Henry S. Brown, the original plaintiffs, having declined to prosecute the case further, Ledyard appeared as appellant in the Supreme Court and his co-defendants below as appellees.

*W. G. Webb*, for appellant.

*B. Shropshire*, for appellees.

MOORE, J.—The original plaintiffs in this case do not complain of the judgment which was rendered against them in the court below. The controversy is now carried on by some of the original

Ledyard v. Brown.

defendants, who claim the land in dispute by adverse and conflicting titles.

The first question presented for our consideration, in disposing of this case, is, to whom was the land in dispute granted by the government? Did Cottle or Richards acquire a superior right by their respective titles? Cottle's grant was first in point of time, and is therefore unquestionably superior in right, unless it must be held void, because the *locus in quo* was not within the jurisdiction of the officer by whom it was issued. The uncertainty and confusion of the colonial contracts of the former government in respect to their boundaries, as well as the frequent conflicts between, and the disputes and controversies among, the officers engaged in carrying them into execution as to the limits and extent of their jurisdictions necessarily resulting therefrom, are well known historical facts, and have often been illustrated in this court. The limits of many of the different colonial grants, among which almost the entire territory of the State was parceled, were fixed by mere imaginary lines. The vague and imperfect information of the government officials with whom the contracts were made, with respect to the distant and almost uninhabited province which they were parceling out, necessarily resulted in the frequent discrepancy between the localities or land-marks designating their boundaries, as called for in the contracts, and as, in fact, found upon the ground. It was not contemplated that the colonial boundaries should be ascertained and marked off by actual survey before they were to be carried into execution. In fact, this would often have been impracticable; and the division lines between the colonies, were really a matter of but little public importance. The object of the government was to populate the country. It was immaterial with the government, from what empresario the settler derived his title. Under these circumstances, we think it could hardly be seriously urged, that a title issued in good faith, and within the limits in which the officer issuing it was accustomed to exercise his jurisdiction, and within the limits to which he might reasonably have concluded his authority extended, should be declared void upon the ascertainment of the fact, years afterwards, that it was a short distance beyond his colonial limits. In

such case, the officer making the grant may be well said to have had *de facto* jurisdiction. The instructions of the court upon this question presented the law properly to the jury, and are in accordance with the rule laid down by this court in the case of Hamilton v. Menifee, (11 Tex., 718.)

The title which the defendants, who claim under it, derive from the contract between Cottle and Brown is one which, under the former decisions of this court, they can not enforce, without additional equities from any that are presented in this case, against the heirs of Cottle. (Clay v. Cooke, 16 Tex., 70; Desmuke v. Griffin, 10 Tex., 113; Hunt v. Turner, 9 Tex., 385; Hunt v. Robertson, 1 Tex., 748.) But it has, also, been more than once decided by the court, that in such cases the heirs of the grantee can not enforce their legal title against the parties claiming under such a contract, without refunding the consideration received by their ancestor. If the question were one of the first instance, we might, perhaps, hesitate yielding it our assent; but it must now be regarded as no longer open for discussion. The instruction given the jury correctly enunciated the rule established by this court. (Mills v. Alexander, 21 Tex., 154; Hunt v. Turner, 9 Tex., 385.)

The only other questions in the case grew out of Ledyard's assertion of title under the statute of limitations. We see no grounds for supposing that any injustice has been done him, either in the general principles proclaimed in the instructions given to the jury, or in their verdict upon the issues submitted to them. Ledyard claims title by possession under both the fifteenth and sixteenth sections of the statute. To sustain his title under the last, he relies upon the possession of Ward, one of his vendors. The duration of Ward's possession was submitted as a question of fact to the jury, and we can not say that their finding was improper, either in respect to the time he had held the possession of the land, or as to the payment of taxes. But if it were conceded that he held it from the day of his purchase until he sold to Ledyard, and paid taxes upon it during all of that time, it would make the case no better: it would still be less than the time required to complete the bar under this section of the statute.

And Ledyard could not tack his subsequent possession to that of Ward's for the purpose of completing it, for there was no pretence that he paid taxes on the land after he purchased from Ward. The position assumed by counsel, that if there were no taxes assessed against the land, Ledyard was relieved from the necessity of proving the payment of the taxes upon it to make good his title under this plea can not be sustained. It is the duty of a party claiming land, to render it to the officer whose duty it is to assess it. Proof of the payment of the taxes is as essential as of the record of his deed. Ward did not hold the land under color of title, and Ledyard can not, therefore, avail himself of his possession in support of the claim of title under the fifteenth section. This only commenced to run, therefore, when he took possession of the land in the spring of 1852, and it must have continued for three years without interruption to have become available. It is evident, at least as to Penn, that it did not do so in less than a year after the date of Ledyard's possession. Penn also went into possession; and as his entry was under the older and superior title, it was an interruption of Ledyard's adverse possession to the extent of his (Penn's) claim, if not in conflict with Ledyard's actual possession. The only error that we see in the ruling of the court in this branch of the case, or, in fact, in any part of it, (if it is such,) is in fixing the period anterior to which the jury should enquire with reference to Ledyard's possession. This suit was commenced the 8th of March, 1855; Ledyard's answer setting up title was filed May 19th, 1859, which, if he had brought no other suit, would be regarded as the beginning of the litigation between him and those with whom the matter is now being contested; and, consequently, if he had been in continued and peaceable possession, as against them, up to that time, he should be entitled to avail himself of it. The bringing of the suit by the original plaintiff will not interrupt his possession as against his co-defendants not in possession, and as to whom he claims an adverse title and possession. It is not interrupted until one or the other claimant put their respective titles in controversy. The record, however, discloses the fact, that Ledyard had, previous

to the commencement of this suit, brought suit against the same parties against whom he is now asserting title, and in March, 1855, obtained in it a judgment by default against DeWitt, one of the defendants. It is not shown when this suit was commenced; but we suppose it was most probably on the day fixed by the charge of the court, anterior to which the jury were instructed to enquire with reference to his possession. At all events, it is certain that it was pending previous to the institution of this suit by the original plaintiffs, at which time the possession of Ledyard had not continued for three years; and if there were a general verdict in the case we might affirm the judgment, for the reason that no injury had resulted from the error of the court in fixing upon the day it has, without evidence of the fact being in the record, beyond which Ledyard could not avail himself of his adverse possession, if, in fact, it continued subsequent to that time. It is, however, the settled practice, where the verdict is found upon special issues alone, that the court can not look beyond it to any fact apparent in the record, in aid of the judgment. We must conclude, therefore, that the verdict did not find all the essential facts necessary to settle the issue between Ledyard and the parties he makes defendants in his cross-bill or amended answer; and that a new trial should, therefore, have been granted. If it were not insisted upon by experienced and able counsel, we would not deem it necessary to add, that the defendants to Ledyard's cross-bill were not required to plead the statute of limitation, to entitle them to show that they were in possession under the superior title, and thus repel the conclusion of a title in him by a continued peaceable possession.

We can not agree with counsel, that Ledyard's interlocutory judgment against De Witt, in his former suit, which was still pending, entitled him to a judgment in this case. It is still within the control of the court, and may be set aside for good cause, and the party permitted to answer. There can be but one final judgment in a cause; and until this is rendered, a party against whom the default judgment is rendered is not finally concluded, even if the plaintiff in that case could have a final

judgment against him without the verdict of a jury. A final judgment only is evidence to support an action; an interlocutory one will not do so.

The judgment is reversed and the case remanded.

Reversed and remanded.