# COÖS,

## JULY TERM, A. D. 1860.

---

### BLISS *v.* BRAINARD.

The validity of a contract is to be determined by the laws of the place where it is made.

Where the sale of liquors, except by persons duly licensed and for particular uses, is prohibited, it is incumbent upon the plaintiff, in an action to recover the price of liquors sold, to show affirmatively that he was duly licensed to sell them, and that they were sold for a lawful use.

Where the sale of liquors is unlawful, no recovery can be had for them, or for the casks in which they were contained and which wore purchased only for the purpose of facilitating the illegal sale, nor for the freight or cartage of the liquors illegally sold, from the shop of the vendor to the place of business of the vendee, in furtherance and completion of such illegal sale, there being in fact but a single contract between the parties.

ASSUMPSIT, upon the following account :

| 1857. | C. H. Brainard to H. C. H. Bliss, | Dr. |
|---|---|---|
| May 27, To ⅛ pipe Cog. brandy, 20½ gallons, at $5 per gallon, | | $102.50 |
| " paid freight, | | .56 |
| " " carting, | | .38 |
| July 15, To 1 bbl. old Bourbon whisky, 41½ gallons, at $2 per gallon, | | 83.00 |
| " 1 bbl. St. George & H. rum, 40 gallons, at $1.25 per gallon, | | 50.00 |
| " 10 gallons brown Sherry wine, at $2, | | 20.00 |
| " barrel, $1 ; keg, $1 ; carting, .75, | | 2.75 |
| " paid freight, | | 2.82 |

$262.01

Plea, the general issue.

The plaintiff testified that he received a verbal order, through his agent, one Thayer, from the defendant for these liquors, which he put up and forwarded to the defendant accordingly, at Keene, N. H.; that he paid the items charged as paid for carting, for conveying said liquors from his store to the railroad depot; that the items charged as paid for freight were actually paid to the Cheshire Railroad Company, for transporting said liquors to Keene; and that the liquors were furnished at the prices charged at the plaintiff's store, and he charged these items of carting and freight over to the defendant. He also testified that the barrel and keg charged in his account were furnished to send some of the liquors in; that when liquors were sold in the barrels or vessels in which they were bought, it was not customary to charge for the casks, but when the liquors were drawn into other casks or vessels, they charged for such casks. The plaintiff also testified that he did not import any of the liquors charged in this bill, but that the first item in his account—the $\frac{1}{8}$ pipe Cogniac brandy—was purchased by him of the person who imported it, and that he took it from the custom-house in Boston, in the original cask in which it was imported; and that he, the plaintiff, sold it to the defendant in the same cask and package and in the same quantity in which it was imported, and as pure and unadulterated as when imported. The plaintiff also testified that in the autumn of 1857 he called upon said Brainard, at Keene, and showed him a bill containing all the items here enumerated; and that the defendant examined them all, and said the liquors gave entire satisfaction, but that business being rather dull he could not pay at that time, but would pay the whole bill as soon as he could.

The plaintiff was not asked by either side, nor did he state, whether or not he was licensed under the laws of Massachusetts to sell liquors.

The defendant introduced no testimony but that of said Thayer, who had been the agent of the plaintiff and the one to whom the defendant gave the orders for the liquors furnished, who testified that at the time the plaintiff ordered these liquors there was nothing said about any carting or freight.

The defendant also introduced the statute of Massachusetts, passed in 1855, and still in force there, extracts from which statute made a part of the case. The court instructed the jury that if they found that the contract for the liquors was completed and the liquors delivered in Boston, at the plaintiff's store, then the plaintiff could recover for nothing except the amount paid out by him for carting and freight to Keene, and for that only, provided they should find that these sums were paid by the plaintiff at the defendant's request, either express or implied, or that the defendant, after the sale and the payment of these sums as aforesaid, promised and agreed to pay these sums to the plaintiff; otherwise they might find for the defendant on those two items; that if the contract was made and the liquors were to be delivered and were in fact delivered in Keene, then that the plaintiff might recover for the two casks charged, only. The jury found for the plaintiff, and allowed him the sum of $4.99, being the amount paid by the plaintiff for carting and freight. Both parties excepted to the rulings of the court. Both the plaintiff and the defendant moved the court to set aside the verdict, and for a new trial;—the defendant on the ground that nothing could be recovered by the plaintiff, either by the laws of Massachusetts or New-Hampshire; and the plaintiff upon the ground that he was entitled to recover all the items charged in his account, because it did not appear that the plaintiff was not licensed in Massachusetts; and on this ground at least, that he was entitled to recover for the ⅛ pipe brandy which was sold in the original package, &c., and for the casks, and carting, and freight.

GENERAL LAWS OF MASSACHUSETTS, PASSED IN 1855.

CHAP. 215. SEC. 1. "It shall be unlawful and criminal for any person to manufacture for sale, or sell, by himself, his clerk, servant, or agent, directly or indirectly, any spirituous or intoxicating liquor, or any mixed liquor, a part of which is spirituous or intoxicating, unless he is duly authorized so to do as is herein after provided." ·

SEC. 2. "Nothing in this act shall be construed to forbid the sale, by the importer thereof, of foreign spirituous or intoxicating liquors imported under the authority of the laws of the United States regarding the importation of such liquor, and in accordance with said laws, provided that the said liquor, at the time of said sale by said importer, remains in the original casks or packages in which it was by him imported, and in quantities not less than the quantities in which the laws of the United States require such liquor to be imported, and is sold by him in said casks or packages, and in said quantities only, and as pure and unadulterated as when imported."

SEC. 37. "All intoxicating liquors kept for sale, and the implements and vessels actually used in selling and keeping the same contrary to the provisions of this act, are hereby declared to be common nuisances, and to be regarded and treated as such ; all payments or compensations for spirituous or intoxicating liquors sold in violation of law, whether in money, labor, or personal property, shall be held and considered to have been received without consideration, and against law, equity, and good conscience ; and in any action, either at law or equity, touching such money, labor, or personal estate, the purchaser, and also the seller of such liquors, may be witnesses for either party."

SEC. 5 provides for the appointment in each town and city of an agent or agents, " to purchase spirituous or intoxicating liquors, and to sell the same at some central and

convenient place or places within said city or town, to be used in the arts, or for medicinal, chemical, and mechanical purposes, and no other."

SEC. 15 prescribes the penalties for violation of the provisions of the law.

*Benton & Ray* (with whom were *Wheeler & Faulkner*), for the defendant.

The prohibition of the Massachusetts statute being general, and the authority to sell the only exception, it must therefore be incumbent on whoever claims that the general rule does not apply to him, to show it.

The *onus probandi* should rest on the party within whose knowledge the fact lies. 1 Gr. Ev. 90, 91, sec. 79, note 1.

The carting and freighting were all done to carry out and perfect a transaction by law declared illegal and criminal, and were therefore themselves criminal. 2 Vt. 91; see also *Taber* v. *Armstrong*, 4 Wash. C. C. 297; S. C., 11 Wheat. 258; 4 Esp. R. 97; Ch. on Con., ch. 5. The contract if illegal was incapable of ratification, or of becoming the consideration of a subsequent promise. *Boutelle* v. *Melendy*, 19 N. H. 196.

*G. C. Williams*, for the plaintiff.

FOWLER, J. The instructions of the court below, taken in connection with the verdict rendered by the jury, raise distinctly the questions, whether, where the price of liquors, sold in another State by a person not shown to have been authorized to sell them, with no evidence for what use they were sold, is sought to be recovered here, the sale is to be presumed to have been made in violation of the general laws of that State, prohibiting all sales of liquors, except to be used in the arts, or for medicinal, chemical, and mechanical purposes, and not for those uses even, unless made by specially authorized agents, and therefore not to be en-

forced here; and if so, whether a contract for the cartage and freight of those liquors, and for the sale of the casks containing a portion of the liquors so sold, and actually used in selling the same contrary to law, can be enforced here, notwithstanding such casks are declared by the laws of that State to be common nuisances, and to be regarded and treated as such.

Generally speaking, the validity or invalidity of a contract is to be determined by the law of the place where it is made. If valid there, it is, by the general law of nations, held to be valid every where, by the tacit or implied consent of the parties; if void or illegal there, as a general rule, it is held void and illegal every where. The exception to this rule as to the validity of contracts is, that contracts which are in evasion or fraud of the laws of a country, or of the rights or duties of its subjects; which are against good morals, or against religion, or against public rights; and those opposed to the national policy or national institutions; are deemed nullities in every country affected by such considerations, though they may be valid by the laws of the place where they are made. But if a contract is void in its origin, it seems difficult to find any principle upon which any subsequent validity can be given to it in any other country. Story Conf. of Laws, secs. 242–244, and authorities cited; *Andrews* v. *Herriot,* 4 Cow. 508, and note to page 510; 2 Kent Com. 457, and notes; *Whitney* v. *Whitney,* 35 N. H. 457, and authorities.

But illegality renders all contracts void. If, then, the sale of liquors at Boston, as found by the jury, was illegal by the laws of Massachusetts, the contract cannot be enforced here. Was it thus illegal? This depends upon whom rests the burden of proof in relation to the matter of license. The jury have found that the plaintiff sold the liquors to the defendant, in Boston. The case does not find that any evidence was offered to show what the liquors were sold to be used for, or whether the plaintiff was or

---
Bliss *v.* Brainard.
---

was not licensed to sell liquors under the laws of Massachusetts. When the sale was proved, was it incumbent on the defendant to go further and show affirmatively that the plaintiff was not licensed, or was it the duty of the plaintiff, if he had a license and wished to avail himself of it, to prove it? We think the latter.

It is well settled here, that in criminal prosecutions for the illegal sale of spirituous or intoxicating liquors, although it is necessary to allege in the indictment that the respondent was not licensed, it is not necessary to offer even *prima facie* evidence to sustain the allegation; but a sale of liquor being proved against him, it is incumbent on the respondent, if he holds and would avail himself of a license, to prove it. *State* v. *Shaw*, 35 N. H. 217; *State* v. *Foster*, 23 N. H. 348, and authorities.

The principle on which this rule is founded has been said to be, that where the subject matter of a negative averment relates to the defendant personally, or is peculiarly within his knowledge, the averment need not be proved by the prosecutor; and if relied upon by the defendant, he must himself prove it. *State* v. *Foster*, 23 N. H. 348. Perhaps it might better rest on another and, as we think, clearer principle, which is, that, the law prohibiting all sales unless by specially authorized agents and for specified purposes, where a sale of liquor is proved, it is presumed to have been made in violation of law, nothing more being shown, since, as by law only one man in a thousand or more could be licensed to sell, the presumption would be that the sale by any individual was unauthorized, until the contrary was shown; just as the presumption is, when a man is shown to have executed a deed or other instrument with the requisite formalities, that he was sane, and capable of executing it, because insanity or incapacity is an exception to the ordinary condition of mankind.

But on whatever principle founded, the rule is well established in this State and elsewhere, that where a sale of

Bliss *v.* Brainard.

liquor is shown in criminal prosecutions, it is incumbent on the defendant to prove that he was authorized to sell it; and, in the absence of such proof, the sale is presumed to have been made without authority—to have been illegal. We see no reason why the same rule should not be applicable to civil suits, to enforce a contract for the sale of liquors. Indeed, all the rules of pleading and evidence require a more favorable presumption in criminal cases, for the respondent.

We are therefore of opinion that the court below rightly instructed the jury, as they did in substance, that, in the absence of any proof by the plaintiff that he was authorized by license, under the Massachusetts act of 1855, to make the sale to the defendant, he could not recover the price of the liquors sold; since, for the want of such evidence, the sale proved was to be regarded as made in violation of law, and so incapable of being enforced.

But another view of this question may be taken, leading to the same result. The plaintiff sought to enforce a contract which the verdict of the jury determines to have been made in Massachusetts. The laws of Massachusetts must therefore determine the construction to be given to it, the obligation and duty it imposes, as well as what shall be a valid discharge of it, or a sufficient defence to an action to enforce it; in other words, those laws must govern as to its nature, validity, construction, and effect. *Whitney* v. *Whiting,* 35 N. H. 457, and authorities on pages 462, 463. By those laws, which are made part of the case, the sale of spirituous or intoxicating liquors, and of mixed liquors, any part of which is spirituous or intoxicating, is prohibited as unlawful and criminal; and no compensation can be recovered for them, unless sold by a person specially authorized for that purpose, and for medicinal, chemical, and mechanical purposes, and no other. Before the plaintiff could demand the aid of the court in this State to enforce his contract for the sale of spirituous and intoxicating

liquors, as specified in the account annexed to the writ, it was incumbent on him to prove that contract to be valid by the laws of the place where it was made and by which its validity was to be determined. He was bound, in the first instance, therefore, those laws positively and expressly prohibiting all sales not made by persons specially licensed and for particular purposes, to show his contract within the exception of the general prohibition of the statute. The burden of proof was upon him to satisfy the court and jury that he was duly authorized to make the sale, and that it was made for medicinal, chemical, and mechanical purposes, and no other. Until he did this, he utterly failed to show any valid contract which the court here was obliged, on principles of comity, or otherwise, to enforce. Not having done it, the jury were properly instructed that he could recover nothing for the liquors included in the account. The law prohibiting all sales not duly made by a licensed agent for specified purposes, the presumption was that this sale, not being shown to have been authorized, was unauthorized, and therefore illegal and criminal.

It has been suggested that there is more or less of conflict between the principle that formed the basis of the ruling of the court below, and which we have endeavored to vindicate as substantially correct and well founded, and the doctrine of the opinion of the court in *Doe* v. *Burnham*, 31 N. H. 426. And we confess that if it can be supposed that the learned judge, who pronounced the judgment of the court both in that case and in *State* v. *Foster*, 23 N. H. 348, intended to hold that, upon the same state of facts and under precisely the same circumstances, in a civil case, the law would raise a wholly different presumption, and require wholly different evidence to produce the same result in the minds of a jury, from what it would raise and require in a criminal case, then the result at which we have arrived is in conflict with the opinion in *Doe* v. *Burnham*. If, for example, it was intended to be holden in that case,

that if a trader of this village were charged by the grand jury, at a trial term of this court, with having, on a given day, without lawful authority, illegally sold a barrel of liquor to one of his neighbors, contrary to the provisions of the statute, after having been guilty of a similar offence on two previous occasions, it would be sufficient, on his trial, for the attorney-general, or solicitor, after proving two former convictions for selling illegally, to call the respondent's clerk, and, having proved by him the fact of the sale on the day charged, there to stop ; and, upon the respondent's objecting that he had not been shown to have made an illegal sale, inasmuch as it had not been shown that he was not duly authorized to make it, the presiding judge would be obliged to instruct the jury that, although every man was presumed to be innocent until proved guilty, and though the State was bound to allege and prove that the respondent was not authorized to sell the liquor he had been shown to have sold, yet, the fact of the sale being established, so great was the presumption of its illegality, and such the facility with which the respondent could disprove it, that they were bound to find the sale to have been illegal and made without authority, in the absence of any proof to the contrary; but that, if immediately afterwards, when the respondent, convicted under these instructions, had been hurried to jail under sentence of fine and imprisonment, upon a trial before the same jury of an action brought by him to recover of his neighbor the price of this very liquor, after the same clerk had been called and proved the sale, upon the defendant's objecting that it had not been shown that the plaintiff was authorized to make it, and therefore he could not be holden to pay the price claimed, the same presiding judge would be compelled to instruct the jury that the sale of the liquor sued for having been proved, so great was the presumption of its legality, that although it was manifestly peculiarly within the power of the plaintiff to show his authority if

he had any, and, by bringing his suit to enforce a contract for the sale of liquor he had substantially averred that the sale was a legally authorized one, and could not recover unless it were so, yet he was not obliged to prove its legality, but, in the absence of any proof to the contrary, they were bound to find the sale to have been legal, and made with due authority ;—then our views are entirely in conflict with those of the court in *Doe* v. *Burnham*. For it seems to us that such opposite and conflicting results, under precisely the same circumstances and precisely the same state of facts, are utterly irreconcilable with the idea that the law is consistent with itself, not to say the perfection of reason ; and we can see no possible cause why, a sale of liquor being proved, under a given state of the law on that subject, the same legal presumptions and results should not follow in a civil as in a criminal case ; and if any difference should exist, it seems to us quite clear that it should be in favor of the criminal prosecution, where not only the property, but the personal liberty, of the respondent is involved.

We do not, however, believe the learned judge who delivered the opinion in *Doe* v. *Burnham* could seriously and deliberately have intended to establish any such irreconcilable distinction in the rule of law in civil and criminal cases. The point, though taken and discussed, was not essential to the decision of the cause, and the decision did not turn upon it. The suit was brought by an innocent indorsee for value upon a negotiable promissory note, and the court very properly held that he was entitled to recover, whether it had been given for the price of liquors illegally sold or not; so that the discussion upon the question of the sale of liquors was wholly collateral and incidental, in no way material to the result arrived at, and therefore not likely to attract particularly the attention of the other members of the court, or to be so fully and carefully considered by him who pronounced the opinion as if the de-

cision had rested upon it. It is, under these circumstances, to be regarded as little more than a *dictum.* There is nothing in what is said in *Doe* v. *Burnham* directly in conflict with the present decision, and so far as there may be an indirect conflict, by undertaking to establish a different rule of law in civil from what is recognized as the well established principle in criminal cases, under the same state of facts and evidence, we think there is clear and manifest error in the prior decision.

That the $\frac{1}{8}$ pipe Cogniac brandy was sold by the plaintiff to the defendant in the original cask in which it was imported, could make no difference in the result at which we have arrived. It appeared that the brandy was not imported by the plaintiff; and the provisions of the second section of the Massachusetts act of 1855, excepting certain sales from the operation of the statute, are expressly restricted to sales, by the importer thereof, of foreign spirituous or intoxicating liquors imported under the authority of the laws of the United States, in the original casks or packages in which they were by him imported.

As regards the casks in which the liquors were sold, by the 37th section of the Massachusetts statute, the implements and vessels actually used in selling and keeping liquors contrary to its provisions, as well as the liquors themselves, are declared to be common nuisances, and to be regarded and treated as such; showing conclusively the intention of the legislature of that State to render not only the unauthorized sale of liquors illegal and criminal, but to place the implements of traffic, and the casks containing them, which were used as the means of promoting the traffic, without the protection of the law. The sale and delivery of the casks were intimately and inseparably connected with, and grew immediately out of, the illegal sale of the spirituous liquors contained in them. One sale was a mere incident or concomitant of the other. There was, in fact, but a single contract, and that for the purchase and

sale of the liquors. The charge for the casks was made according to a custom in such cases; and the carting, truckage, and freight seem to have been mere incidents necessary to facilitate and perfect the trade. Aside, therefore, from the positive provisions of the Massachusetts statute, withdrawing all protection from vessels and casks when employed as the instruments for perpetrating a violation of positive law, we think the sale of the casks was so tainted with the illegality of the sale of the liquors, so much a part of the *res gestæ* of the main illegal and criminal transaction, and so much the mere instrument whereby it was accomplished, that no action can be maintained to recover their price.

Where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. So if the contract be in part only connected with the illegal consideration, but growing immediately out of it, though it be in fact a new and separate contract, it is equally tainted by it. *Armstrong* v. *Toller*, 11 Wheat. 258, and authorities; *Cannan* v. *Bryce*, 3 B. & Ald. 179; *Law* v. *Hodson*, 11 East 300.

It is a clear rule of law that no right of action can spring out of an illegal contract. *Ashurst*, J., in *Blackford* v. *Preston*, 8 D. & E. 89; *Hunt* v. *Knickerbocker*, 5 Johns. 327; *Wheeler* v. *Russell*, 17 Mass. 258; *Springfield Bank* v. *Merrick*, 14 Mass. 329; *Fales* v. *Mayberry*, 2 Gall. 560; *Russell* v. *De Grand*, 15 Mass. 39; *Langton* v. *Hughes*, 1 M. & Sel. 593; Smith Merc. Law 427, and notes; *Hooker* v. *Vandewater*, 4 Den. 349; Ch. on Con. 657.

A court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land. *Holman* v. *Johnson*, Cowp. 341; *Jackson* v. *Duchaise*, 3 Tenn. 551; *Duvergier* v. *Fellows*, 5 Bing. 248.

In the present case, the contract for the casks in which

to place, for the purpose of transportation to their destination, the liquors sold in violation of law, must have been entered into for the express purpose of carrying out and perfecting the illegal sale of the liquors, and was indeed part and parcel of that sale.

In *Bartlett* v. *Vinor*, Carth. 252, Skin. 322, *Holt*, C. J., says: "Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, though the statute itself does not mention that it shall be so, but only inflicts a penalty on the offender; because a penalty implies a prohibition, though there are no prohibitory words in the statute." 1 Pars. on Con. 380, and notes.

We are therefore of opinion that the court properly instructed the jury that the plaintiff could not recover for the casks in which the liquors were sold and delivered.

The remarks and principles we have suggested in relation to the casks containing the liquors, apply with equal force to the charges for the cartage and freight of those liquors. The testimony of the plaintiff showed those items to have been intimately connected with the sale of the liquors—in truth, almost a part of the sale itself—so that it is extremely difficult to perceive upon what grounds the jury could have found the sale to have been completed in Boston and not in Keene. At all events, the plaintiff's own testimony tended to show the contract for cartage and freight to have been entered into for the express purpose of carrying into effect the sale of liquors in violation of law, and to have been, therefore, one of those contracts which a court of justice will not lend its aid to enforce. Consequently the court below erred in instructing the jury that the plaintiff could recover the sums paid for this cartage and freight. The verdict rendered under these instructions must therefore be set aside, and a new trial be granted.

*Verdict set aside—new trial granted.*