WILLIAM F. R. YOUNG V. GARRETT VAN BENTHUYSEN ET UX.

The 108th section of the act to regulate proceedings in the district courts reads as follows: "In civil suits the jury may find and return a special verdict in writing, in issues made up under the direction of the court, declaring the facts proved to them; any verdict so found shall be conclusive between the parties as to the facts found." (Paschal's Dig., Art. 1469, Note 565.) It is the settled practice, where the verdict is found upon special issues alone, that the court cannot look beyond it to any fact apparent in the record in aid of the judgment.

Where a note is payable twelve months after date, the debtor has until the last minute of that day to pay the note.

Where a deed of trust declares that if the debt be not paid at maturity, the trustee may advertise for twenty days and sell; if he advertise less than twenty days, the sale is void.

Where a special issue was framed upon the act of 5th February, 1840, as to whether the improvements were made in good faith or not, and the jury responded that they were not, the consequence is that the defendant can recover no payment for improvements. (Paschal's Dig., Art. 5300, Note 1147.)

A deed made by a married woman for land, even if the land had been her own, would not have passed the title unless it were acknowledged before a proper officer, according to the statute in such cases made and provided.

A deed by a married woman of the community real property, without the concurrence of her husband, is entirely worthless. (Paschal's Dig., Art. 1003, Note 427.)

The constitution and laws have so hedged in a homestead from sale that courts are required to scrutinize very closely, to see that all the constitutional and statutory requirements have been fully complied with, before they will pronounce a sale of the same to be valid.

Where the jury found a special verdict, upon which the district court rendered a judgment, which was reversed, the Supreme Court rendered a decree in accordance with its own notions of justice.

APPEAL from Galveston.   The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

The material facts are stated in the opinion of the court.

*A. P. Wiley* and *Jesse Stancel,* for appellants.

*F. H. Merriman* and *Thompson & Goldthwait,* for the appellees.—I. As to the alleged incapacity or want of knowledge on the part of Mrs. Sarah Young as to the execution of the deed in trust to Frank Hitchcock. The court is referred to the testimony of Hon. Edward T. Austin, then notary public of the county of Galveston, now county judge of said county, as to the condition and capacity of Mrs. Young at the time of her separate examination and acknowledgment of the instrument in question.

It is ruled by the Supreme Court of this state that the conveyance of the *femme covert,* made under the forms of law, of her separate property, is as valid as if made by a *femme sole,* or other person having capacity in law to contract, and its effect can be avoided only by showing mistake, fraud, or duress.   (Callahan v. Patterson, 4 Tex., 61; Hartley v. Frosh, 6 Tex., 208,; Shelby v. Burtis, 18 Tex., 644.)

II. And by the act of April 30, 1846, the separate property of the wife, and the homestead exemption and other property exempted by law, are placed on the same footing.   The law is the same as to each and all, and so the decisions

quoted apply to the homestead exemption as well as to the separate property of the wife.

There is no dispute about the facts, no contrariety of testimony and no contest in relation thereto. The note was due and payable 11th November, 1859; the notice of sale by the trustee was given first on the 11th November, 1859, in a daily newspaper of the county of Galveston, appointing the 1st day of December for the sale, and on which day the sale was made fairly and to the highest and best bidder.

III. It is laid down in Comyn's Abridgement or Digest, title "Temps," and he is said to be himself an authority, that "if a thing be limited to be done within such a time after a fact, the day of the fact shall be taken inclusive; as where the Statute, 27 Elizabeth, 18, requires an action against the hundred within a year after the robbery, the day of the robbery shall be included within the year," and he cites: Hob., 139; 2 Roll., 520, l. 37; Doug., 465; 3 Term, 623 acc.; 7 Comyn's Dig., 397, Phil. ed., 1826.

Again he says: "When time is to be computed from an act done, the day on which the act is to be performed is included, because the act is the *termus a quo* the computation is to be made, and in contemplation of law there can be no fraction of a day." (7 Comyn's Dig., 397.)

So, when the law requires that a month's notice of an action shall be given, the month begins with the day on which the notice is served. (Castle v. Burditt, 3 Term, 623; Glassington v. Rawlins, 3 East., 407; 22 Eng. Com. Law, 270.)

The same principle of computation of time has been recognized and adopted in the courts of the United States and of the several states of the United States. (Arnold *et al.* v. The United States, 9 Cranch, 104; 3 Pet. Cond., 296; Ronkendorff v. Taylor's Lessee, 4 Pet., 349.)

A summons in a justice's court, returnable in the forenoon of the 8th day of the month is well served in the

afternoon of the 2d day of the same month.   Fractions of a day in the service of process, notices, or pleadings, are not regarded in the computation of time.   The act of the legislature of New York in this case required service of the summons six days previous to the return day thereof. (Columbia Turnpike v. Haywood, 10 Wend., 422;   The People v. Sheriff, 19 Wend., 87;   Chase v. Gilman, 3 Shep., 64;   Ryman v. Clark, 4 Blackf., 329;   Ogden v. Redman, 3 A. K. Mar., 234;   Hoffman v. Duel, 5 Johns, 232;   State v. Jackson, 1 South., 323;   Priest v. Tarleton, 3 N. H., 93; Wheeler v. Train, 4 Pick., 167.)

Applying the rule of law as to the computation of time, and if insisted upon that the 11th day of November is to be excluded from the account, the 12th is certainly to be included, and the 1st day of December will make the full complement of twenty days.   Including the 12th day of November there will be nineteen days in November and one day in December, and on which day the sale was made. The law takes no notice of the fractions of a day.

The legislature of Texas, in prescribing the time for service of process returnable to the district courts, declares that it shall be served five days before the term to which it is returnable, excluding both the day of service and of the return.   Why this particularity, save to avoid the rule of law above quoted, that excluding the day of service the day of return would be included.

In this case the limitation of the trust is not, for twenty days' default, or after any particular time or event, that notice of sale should be given, but it is, that in case of default, and at any time after default shall happen, at the request of the holder of the note so unpaid, to "advertise said property for twenty days" in some newspaper, &c.

[The question of good faith, upon the law and the facts, was also argued.]

MORRILL, C. J.—On the 11th November, 1858, J. R.

Young executed his promissory note of that date for
$1,200, payable to L. M. Hitchcock in twelve months after
date.   On the same day Young and his wife, Sarah Young,
executed a deed of trust, conveying to Franklin Hitchcock
certain lots of land in the city of Galveston, which was
their homestead, authorizing and empowering the trustee,
if the note should not be paid at maturity, to advertise the
lots for sale for twenty days in some newspaper in the
county of Galveston, and sell the same to pay the note,
and convey to the purchaser the title therefor.   The deed
was legally authenticated for record and recorded.

In the summer of 1861 J. R. Young died.   On the 14th
May, 1866, Sarah Young instituted suit for herself, and as
guardian of the minor children of herself and J. R. Young,
deceased, against defendants to recover the land, and during
the pendency of the suit, and before trial in the district
court, she died, and the suit is prosecuted for the benefit of
the children and heirs of J. R. Young and Sarah Young,
deceased.

Mrs. M. Van Benthuysen, one of the defendants, pleaded
a title from the trustee to L. M. Hitchcock, dated December
1, 1859, a deed from L. M. Hitchcock to herself, dated
January 12, 1860, as well as the deed in trust before men-
tioned; pleaded improvements made in good faith and the
limitation act of five years.

On the trial there were fourteen questions propounded
to the jury, who were requested to find a special verdict,
and the jury responded to the questions as follows:

1. The jury find from the evidence that Mrs. Sarah
Young executed the deed of trust, and acknowledged the
same privily and apart from her husband, having the same
explained to her, and without any fraud on the part of L.
M. Hitchcock.

2. We do not believe that the trustee, Frank Hitch-
cock, advertised the property twenty days after the maturity
of the note, but he sold the same to the highest bidder,

without fraud, and conveyed the same to the highest pur-
chaser, L. M. Hitchcock.

3 and 4. Mrs. Sarah Young was present at the public
sale of the property, and did not object to or forbid the
same.

5. The sum for which the property sold was applied to
the payment of the note.

6. Margaret Van Benthuysen had notice of an irregu-
larity in the sale by the trustee of trust sale.

7. Mrs. Sarah Young accompanied Margaret Van Ben-
thuysen to L. M. Hitchcock, and requested him to sell said
property to Mrs. Van Benthuysen.

8. Mrs. Van Benthuysen did not buy the property in good
faith, but paid the purchase-money for the same. (In the
interrogatory the judge stated "good faith, as here used,
means a purchase under such circumstances as would lead
an ordinarily prudent person to believe he was purchasing
a good title.")

9. The rent of said property since the 14th May, 1866,
was worth $50 per month.

10. The value of the improvements placed upon the
property from the 1st January, 1860, till the 14th May,
1866, is $2,800.

11 and 12. From the 12th January, 1860, to the 14th May,
1866, the rent of the property was worth $20 per month;
and from 14th May, 1866, $50 per month.

13. The value of the property on the 1st January, 1860,
was $2,000.

14. The present value of the property is $10,000.

The statute (Paschal's Dig., Art. 1469) provides, "in
civil suits the jury may find and return a special verdict in
writing, in issues made up under the direction of the court,
declaring the facts proved to them; any verdict so found
shall be conclusive between the parties as to the facts
found."

In Ledyard v. Brown, 27 Tex., 406, the court said: "It

is the settled practice, where the verdict is found upon special issues alone, that the court cannot look beyond it to any fact apparent in the record in aid of the judgment."

Upon the above special verdict the judge entered judgment generally in favor of the defendants.

Neither party made any exceptions to the special issues as found; the defendant has assigned no errors either of the jury or judge, and the only errors assigned by the plaintiff are, that the judge erred in not giving judgment for the plaintiff on the special issues submitted.

The two pivotal points in the case are, first, did the father and mother of plaintiffs, by themselves or their agent, sell the land in question? second, if the first question is negatived, did the defendant purchase the same in good faith, such as will entitle her to pay for the improvements?

The jury have found, in response to the second question, that the trustee did not advertise the property for twenty days after the maturity of the note. We do not perceive the necessity of submitting this question to a jury.

The note was dated 11th November, 1858, and due and payable in twelve months after date. The payee had no legal right to demand payment till the 11th November, 1859, and the debtors had until the last minute of that day to pay the note. The note was not due in twelve months before the 11th, or twelve months from any particular hour of the 11th, but twelve months after that day. (Story on Prom. Notes, secs. 211, 213; Edwards on Bills, 515; O'Connor v. Towns, 1 Tex., 107.)

The default of payment, therefore, could not have occurred till the first minute of the 12th November, 1859, and as the trustee sold on the 1st December of the same year, he sold the property before, or rather, he did not sell the property after the lapse of twenty days from and after the default of payment. The twenty days must be regarded as one indivisible period of time.

It does not appear from the record whether this note was

entitled to grace, and we have considered it in the most favorable view for the defendant. And, as the whole case turns upon the issue here presented, we have reviewed the special verdict found by the jury, and concur in their finding.

When the makers of the deed of trust executed it, they specified therein the conditions prerequisite for the sale of the property, and the trustee's duty was to comply with the terms by virtue of which he was authorized to act. He had no more authority to abate one day of the time from the default of payment to the day of sale than he had to disregard all the time, or any other requirement therein set forth. He was not the general, but the special agent of the principals, and as such had no authority to act in any other way or manner than agreeably to the instructions which gave him his authority. Not having acted in the manner, and in the only manner, he was authorized to act, in capacity of agent, his acts did not bind his principals, and his pretended sale did not bind them; and, so far as their rights and interests are concerned, the sale is null and void.

The second question refers to the good faith of defendant. This question the jury decided in response to the sixth question, that "Margaret Van Benthuysen had notice of an irregularity in the sale by the trustee of trust sale," and also by the response to the eighth question, in answer to which they say, " Mrs. Van Benthuysen did not buy the property in good faith," &c.

The statute (Paschal's Dig., Art. 5300) provides, that "in any action of trespass to try title it shall be lawful for the defendant, at any time before the trial of said suit, to suggest to the court that he and those persons whose estate he has in the lands and tenements sued for have had adverse possession of the same, in good faith, for at least one year next before the commencement of the suit; and that he and those persons whose estate he has have made permanent and valuable improvements on the lands sued for during the time he or they have had such posses-

xxx—49

sion of the same; and the jury trying the suit, if they shall find for the plaintiff, shall at the same time inquire if the suggestion so. made be true or false; if false, they shall return a verdict, as in ordinary cases, for the damages sustained * * * ."

The jury decided adversely to the plea of defendant, and that she was not a possessor in good faith. The consequence is, that the defendant can recover no payment for improvements.

The counsel of defendant, in his very able argument, has placed great reliance on the seventh issue proposed to the jury, in which they say: "Mrs. Sarah Young accompanied Margaret Van Benthuysen to L. M. Hitchcock, and requested him to sell said property to Mrs. Van Benthuysen," and insists that the plaintiffs are estopped by the actions and sayings so found.

To give the most claimed by defendant, this advice or request could not operate more favorably for defendant, or more adversely to plaintiffs, than if Mrs. Young had then and there executed a deed for the lots to defendant. But a deed made by a married woman for land, even if the land had been her own, would not have passed the title unless it were acknowledged before a proper officer, according to the statute in such cases made and provided; a deed by a married woman of the community real property, without the concurrence of her husband, is entirely worthless. But the constitution and laws have so hedged in a homestead from sale, that courts are required to scrutinize very closely to see that all the constitutional and statutory requirements have been fully complied with, before they will pronounce a sale of the same to be valid.

We cannot reconcile the issues found by the jury, and the statement of facts upon which those issues were founded, with the position assumed, that the defendant was influenced by what Mrs. Young did or said to make the purchase. The jury found that the lots were worth, at the

time, $2,000.   When we consider that this was the only home and the only property of this family, and that this family had, about one month previous to that time, been, by force, turned out of this their home, and had since that time depended upon the charity of their neighbors for their daily support, we cannot but suppose that some motive besides what has been disclosed, except in an indirect way, was influencing this doubly unhappy woman to make the request which would have the effect of forever preventing her to recover this home.   Why this request was made we are left to conjecture; but it is rather singular that Mr. Hitchcock would sell property that cost him $1,200 for one-fourth of that sum, and more especially when it was worth $2,000.

We have examined the statement of facts upon which the jury based their special verdict, and believe the verdict to be sustained by these facts.   We further consider that the judge erred in the judgment entered on the same.   It is therefore ordered that said judgment be reversed, and this court proceeding to render such judgment as the district court ought to have rendered, it is considered that the plaintiffs, William F. R. Young and George L. Young, have and recover of and from the defendants, Garret Van Benthuysen and Margaret Van Benthuysen, lots Nos. 1, 2, 3, and 4, in block No. 434, in the city of Galveston, and county of Galveston, with all the appurtenances thereto belonging; and it is further considered, that said plaintiffs have and recover of said defendants the sum of $1,521 33, as found by the jury, for rent of said lots from the 12th day of January, 1860, to the 14th May, 1866, and the further sum of $50 per month for rent of the same from the 14th May, 1866, to the time the same shall be delivered up to the plaintiffs, together with all costs in the district court and this court herein expended; and that this decision be certified to the district court, to be carried into execution.

DECREED ACCORDINGLY.