Syllabus.

## John Kuhlman v. Anton Medlinka.

In rendering a judgment on a special verdict, the court must be confined to the verdict, and cannot look to the facts proved, but not found in the verdict. (Paschal's Dig., Art. 1469, Note 565.)

Where the verdict is found upon special issues alone, the court cannot look beyond it to any other fact, apparent in the record, in aid of the judgment.

Where the jury found that lots were conveyed by absolute deed to secure a loan of $125; that the rents were to go against the interest; that the rents were worth $3 per month; but did not find that the contract was usurious, the court cannot say it was usury, but will set off the interest against the rents. (Paschal's Dig., Art. 3942, Note 932.) The jury might well have found the contract usurious, but the court is confined to the verdict.

A witness who speaks the German and English languages may read letters and receipts which he wrote in German, and which a party signed, to the jury, the witness improvising a translation, and telling the jury what the letters would be in English, without the witness having been sworn as an interpreter. (Paschal's Dig., Art. 3761.)

The 108th section of the act to regulate proceedings in the district court reads as follows: "In civil suits the jury may find and return a special verdict in writing, on issues made up under the direction of the court, declaring the facts proved to them; any verdict so found shall be conclusive between the parties as to the facts found." (Paschal's Dig., Art. 1469, Note 565.)

And the 99th section makes it the duty of the judge, after the argument of the cause, to "deliver a written charge, and to so frame his charge as to submit questions of fact solely to the decision of the jury, deciding on and instructing them as to the law arising on the facts, distinctly separating questions of law from questions of fact." The charge should be after the argument, and there can be no objection to framing special issues, since the statute seems to require it. (Paschal's Dig., Art. 1464, Note 562.)

Where the appellee had not complained of the special verdict, and the facts found would enable the court so to reform the verdict as to render full justice to the plaintiff, yet because full justice had not been done in the verdict to the appellee, the court ordered a new trial.

Appeal from Harris. The case was tried before Hon. E. A. Palmer, one of the district judges.

The *Reporter*, after the most diligent efforts, has been unable to get the record in this case. But, judging from the opinion and the appellee's brief, there is no doubt but the learned judge has given every material fact in the case.

No brief for the appellant has been furnished to the *Reporter*.

*Henderson & Johnstone*, for the appellee, cited Paschal's Dig., Art. 1469, Note 565, for the conclusiveness of a special verdict. And that a new trial will not be granted, unless it be shown that the verdict is palpably wrong, they cited Art. 1470, Note 566.

That a defeasance to a mortgage may rest in parol, they cited the authorities collected in Note 420, p. 257, of the same work.

*William P. Hamblin* also filed a brief for the appellee.

DONLEY, J.—The appellee, who was plaintiff below, alleges, that, being indebted to one Charles Stephams for a tract of land, the appellant, at his request, paid to Stephams the money; that appellant was owing Stephams for the land, and Stephams, at the request of the appellee, made to the appellant a deed to the land. That appellant had paid for and advanced to appellee $175, for which appellee was to pay appellant the sum of $4 a month interest. That to secure the money loaned by appellant to appellee, Stephams, at the request of appellee, conveyed the land to appellant; that the conveyance, though in form an absolute conveyance, yet in fact was a mortgage, and intended to secure and make certain the re-payment of the money loaned and advanced by appellant to and for appellee. That appellee gave possession of the property to appellant, and it was agreed that the rent of the house should be taken in payment of the interest of the money loaned and advanced by appellant to and for appellee. That appellee had paid, in addition to the rent, eighty cents a month for the use of the money. That appellant had possession of the house for more than four years, and that the rent of the house has more than paid the principal

debt, and that appellant is indebted to appellee for rent of the house a large sum of money. That to avoid litigation, before the institution of this suit, appellee offered to pay to appellant the $175, and take a conveyance to the property; that appellant refused to receive the money, and claimed the lots as his own property, and has had the title papers recorded, which are absolute in form, although given to him as a mortgage. Appellee claims the property as his homestead; he prays that appellant be compelled to pay rent; that appellee be allowed to redeem; and that the deeds to appellant be annulled, &c. It is averred that the lots and land are of the value of $1,500.

Appellant's answer avers that if appellee ever had cause of action against appellant, the same has been lost by the laches of the appellee; that appellant is the rightful owner of the land by purchase from Stephams; that he has been in possession more than five years; pleads limitation; and that appellee had been absent from the State for more than six years; denies all knowledge that appellee had purchased the land of Stephams, and that the money loaned by appellant to appellee was to pay the balance of the purchase-money appellee was owing to Stephams for the land; that appellant applied to him for a loan to pay Stephams. On the trial the deed from the sheriff to Stephams, and from Stephams to appellant, was read in evidence.

There was proof of a payment by appellee of a part of the consideration of said land, to which appellant objected. It was also proved that appellant paid to Stephams about $125, and took a conveyance, by assignment, of the deed from the sheriff to Stephams, of the land, and having been sold under decree of the court as the property of appellee, and purchased by Stephams. Plaintiff introduced two letters, written in the German language, which were written by the witness at the request of the appellant. The substance of the letters was, that the appellant was in possession of the land in controversy; had rented the same for $5 a month,

which makes a monthly difference of sixty cents against the appellee, the interest on the money exceeding the rents by that amount. The appellee was requested to send to appellant the money which he had borrowed of appellant, otherwise appellant would keep the place himself, and consider it his honestly-acquired property; that the appellant preferred the money to the house. The defendant, by his counsel, objected to the testimony, because the deed was absolute, and no other construction could be given to it. It was also objected that the witness had not been sworn as interpreter, and no written translation was produced. The witness testified that he had written the letter, and had correctly translated it. The objections of appellant were overruled, and the letters were read in evidence to the jury, to which the appellant excepted.

Appellee also read in evidence a receipt for the payment of interest by appellant to appellee for the month of January, 1855; also interest for March, 1855. Other receipts and letters were read as being in English, though in fact written in German, without any translation. All the receipts were for balances of interest, the rent of the house not being sufficient to pay the interest.

Charles Stephams, for appellee, said he conveyed the property to the defendant; that he sold the property to appellee; that the appellee had paid the purchase-money, except the last note. Witness obtained judgment against him for that, and had the property sold by sheriff, and purchased it. After he purchased the property, he agreed with appellee that he should take back the property if he would pay the balance of the purchase-money; that appellee took witness to appellant, who paid him $125, the balance of the purchase-money, and he transferred the deed to appellant, who said he wanted to assist appellee. Gobrel, a witness for plaintiff, testified, that when plaintiff left the State he made witness his agent, and told him to have the house kept in good order. This was in presence of the

appellant; that he supposed the notes would pay interest; that appellee borrowed $50 more of appellant when he was about leaving the State; that witness, as the agent of appellee, had offered appellant his money back, but appellant said he had already sold the property. This witness testified that, at the time appellee appointed witness his agent to look after the property, appellant was present, and appellee had borrowed of appellant $50 more, making his indebtedness to appellant $175; that, before borrowing this $50, appellee had offered to sell the property to witness for $250; that he thought it was then worth $300, but could not buy; that the place was worth $1,000 at the time of testifying; that it had been rented all the time by appellant till he sold it; that the rents were worth $5 a month.

The appellant read in evidence the sheriff's deed, and conveyance of Stephams to appellant, and proved the payment of taxes.

Bolengathey, for defendant, testified that he had rented the premises from defendant, paid him $3 50 per month, and made improvements on it; it is worth $500.

The jury returned a special verdict that appellee purchased the land of Stephams in 1853, and kept possession till 1854; there was paid of the purchase-money $54 by appellee's wife, and $25 by appellee. The property was sold under execution and purchased by Stephams, who agreed with plaintiff that he might redeem by paying the balance of the purchase-money due, with the expense of sale; that the transfer from Stephams to appellant was made in pursuance of the agreement between Stephams and appellee, that appellee should redeem the property, and that the conveyance to appellant was intended only as security for the money advanced by appellant; that appellant was to have the use of the house and land for the interest on the money advanced; that appellant has had possession of the property; the rents were worth about $2

per month; that appellant sold the land; at the time of the sale it was worth $600; at the time of the trial it was worth $800; that plaintiff, in 1859, tendered to appellant $175, being the amount loaned; that defendant has paid the amount of $14 25 for taxes. In rendering judgment on a special verdict, the verdict is the foundation of the decree, and it is not competent to look to the facts in evidence for the purpose of determining what judgment can be rendered on the verdict.

In Lee v. Campbell's Heirs, 4 Porter, 202, it was insisted that, "for the purpose of learning what proof was offered by the plaintiff below, it was competent for the court to look into the proof, which was made a part of the record in the circuit court, and also to refer to the bill of exceptions taken at the instance of the plaintiff in error." It was held, that "to determine a verdict to be amendable supposes the court to possess the power to employ the manual process necessary to effect a literal amendment. To amend is, in effect, to reform; to do which, according to all correct reasoning, requires the same power as to make. We do not feel ourselves authorized to aid the verdict by a reference to the other facts on the record. Were we to do so, the verdict, instead of being the act of the jury, would be that of the court.

In Jenks et al. v. Hallet, 1 Caine, 60–64, it is said, "This is the case of a special verdict, and this court can intend nothing but what was found by the jury."

In Seward v. Jackson, 8 Cow., 409, it is said, "To the court it belongs to apply the law to the facts; but the court has no jurisdiction to decide upon evidence, or to enter into any question of fact that may arise in the cause. This is a cardinal rule in the law of special verdicts, which has always been observed and enforced by courts of law. It is of the essence of a special verdict that the jury find the facts."

In Buckhead v. Brown, 5 Hill, 634–646, the court says:

"There are facts stated in the case from which it may be inferred that a commission was paid by Smith & Town, but the fact of payment, if it exist, should have been found by the jury. This is a special verdict, and neither party has the right to ask the court to presume facts for the purpose of making out the case."

In Barnes v. Williams, 11 Wheat., 415, 416, the court says, "That upon inspecting the record, it had been discovered that the special verdict found in the case was too imperfect to enable the court to render a judgment upon it. And although, in the opinion of the court, there was sufficient evidence in the special verdict from which the jury might have found the fact, yet they had not found it, and the court could not upon a special verdict intend it."

When the verdict is found upon special issues alone, the court cannot look beyond it to any fact apparent in the record in aid of the judgment. (Ledyard v. Brown, Galveston T., February 26, 1864,) [27 Tex., 393.]

Looking to the verdict as the basis of the judgment in this cause, it cannot be sustained. It appears that the appellant advanced to the appellee, as a loan, $175, and was to have the house and land for the use of the money. If the agreement was made, as it is in the verdict found, it is not perceived that there is any legal objections to it, unless it was a device for the purpose of covering a usurious transaction. That it was such a transaction, is not so found by the verdict in this case. If the money was loaned for the use of the house, the appellant was entitled to set off the interest against the occupation of the house, until the appellant was put in default by the appellee tendering, or offering to pay, to appellant the money loaned to appellee.

The judgment, it is believed, was founded on the belief that the transaction was usurious, and that appellant was not entitled to any interest for the use of the money loaned to the appellee. The facts in evidence, it is believed, might

have warranted the jury in finding that the money was advanced upon a usurious agreement, and that the money becoming due for the use of the house and lot should be applied in payment of the principal of the debt; but the jury have not so found, and the judgment, as we have seen, must be founded on the verdict returned by the jury, and not upon the facts which were in evidence before the jury, although those facts might have warranted the jury in finding a different verdict.

It is objected, that a witness for the appellee was permitted to read in evidence to the jury from a writing in the German language, as if the instrument, which was in German, had been written in English; and that the witness was not sworn as an interpreter, and no written translation of the writing was produced on the trial. It is believed that it was sufficient if the witness was sworn in the usual form. The evidence he is to give is, that the letter from which he reads is written in the German language, and that the writing, when rendered in English, is to the effect stated by him. Such mode of testifying secures the defendant every right that a translation of the paper, written out, could possibly secure. To authorize him to translate the letter, he must understand the two languages. If he deliberately assumed to understand the two languages, and deliberately read to the jury, as a true translation of the letter, what in fact was false and fabricated by him for the occasion, he would be guilty of perjury. It is not perceived that the defendant is deprived of any legal right by the witness translating, and reading the letter as translated to the jury.

It is assigned that the court erred in submitting the special issues to the jury, the issues having been made up by the court after the closing of the evidence, and not being legitimate from the pleadings in the cause, &c.

By Article 762, [494?] O. & W. Dig., it is provided, that "in civil suits the jury may find and return a special verdict

in writing, in issues made up under the direction of the court, declaring the facts proved to them; any verdict so found shall be conclusive between the parties as to the facts found." [Paschal's Dig., Art. 1469, Note 565.]

The statute anthorizing the jury, under direction of the court, to return a special verdict, must be held as conclusive of the right.

By Article 491, O. & W. Dig., it is provided, that "after argument of a cause the judge may deliver a charge to them [the jury] on the law of the case." [Paschal's Dig., Art. 216, Note 279.]

The statute, it appears, if it may be held as restricting the time as to when the charge shall be given, is to require that it be given after the argument of the cause, as was done in this case. There certainly is no error in doing what the statute expressly provides may be done.

The appellee has not complained of the verdict in this case, and it does not appear to us that the appellant has just cause to complain. And as facts are found upon which a judgment might be rendered disposing of the matter in issue, it is believed that it is competent for the court here to render such judgment on the verdict as should have been rendered in the district court, and that such practice has been recognized and acted upon by this court; yet, as it does not satisfactorily appear to us that justice to all parties will as certainly be done by reversing and rendering as by re-manding, the judgment will be reversed and the cause remanded. (Kendrick v. Taylor, Knoff & Co., Tyler T., 1864;) [Kendrick v. Taylor & Hart, 27 Tex., 695?]

REVERSED AND REMANDED.