### E. M. COLLINS v. THOMAS F. COOK.

1. In a suit by the executor to enforce a vendor's lien against one who had purchased from the vendee, the declarations of the testator that he held no lien on the land are admissible in evidence for the defendant, if in purchasing he had by such declarations been induced to believe, or had been strengthened in the belief, that the land was free from the vendor's lien.

2. Where improper evidence has been admitted without objection, it is the duty of the party whose interests are jeopardized by it to move that it be excluded from the consideration of the jury; if this is not done, the objection to its admission, raised for the first time on motion for a new trial, will not be considered on appeal.

3. Though a vendor may design the perpetration of a fraud upon his creditors in making a sale, yet if the purchaser has paid a sufficient consideration, in ignorance of the fraudulent design, he will be protected in his purchase.

4. It is not error to submit special issues in a charge to the jury if they be given in a clear and proper form on the issues raised by the pleading.

APPEAL from Houston. Tried below before the Hon. Leroy W. Cooper.

Emeline M. Collins, as the executrix of the will of Thomas P. Collins, brought suit in January, 1872, against Thomas F. Cook, on two notes for $514.28, which were executed, one for $500, in July, 1866, and the other for $14.28, in April, 1863. The notes were alleged to have been purchased in due course of trade. The note for $500 is as follows:

"$500.                    CROCKETT, 17 July, 1866.

"On the first day of January next I promise to pay Stilwell Box, or bearer, five hundred dollars, with ten per cent. per annum interest from first day of January, 1861 (sixty-one), until paid, being in part payment of 400 acres of land purchased from him on 24th August, 1859.

(Signed)                         "JOHN COOK."

The petitioner alleged that John Cook conveyed the

land to his son, Thomas F. Cook, on the first of June, 1869, with full notice to the vendee that a portion of the purchase money was unpaid, and of the equities and rights of the petitioner ; that John Cook was at the time largely indebted, "and did illegally make conveyance of all his said estate and effects that was subject to the payment of his aforesaid debt to his said son, he, the said defendant, well knowing, conniving and participating in the said fraudulent transaction ;" that John Cook died, leaving no estate with which the satisfaction of his said debts could be obtained, except the assets placed in the hands of defendant, who never had administration on his estate; that the effects received by defendant were amply sufficient to pay off the claims against the estate ; that defendant had squandered them, and thereby made himself liable for payment of the debts.    The enforcement of the vendor's lien was prayed.

The defendant, Thomas F. Cook, in his answer, plead payment of the note, specifying when the payment had been made, and alleged that he was an innocent purchaser without notice of the existence of any lien on the land.

On the twenty-seventh of August, 1872, plaintiff amended, and alleged that the transfer from John Cook to defendant was without valuable consideration and was intended as a gift.

On the ninth of August, 1873, the defendant amended, denying all fraud and collusion in the purchase, and alleging the payment of a valuable consideration, without knowledge of any lien.

The plaintiff on the trial read in evidence a deed from Stilwell Box and his wife to John Cook, conveying the land on which the vendor's lien was claimed, bearing date August 24, 1859, and a deed from John Cook to Thomas F. Cook, the defendant, which was witnessed by Stilwell Box, of date June 1, 1869.   The deed to Thomas F. Cook expressed a consideration of four hundred dol-

lars paid. The deed from Box and wife reserved no lien on the land, but recited in the usual form the payment of the purchase money. After reading the notes sued on, plaintiff closed.

The defendant, Thomas F. Cook, introduced Marion Box, who testified to some sort of settlement or payment of money by Hope Cook, a son of John Cook, to Collins, about February, 1864, just before Hope Cook left for the army. Wiley Cook testified that not more than two or three weeks before Hope Cook left for the army he saw John Cook, deceased, give to his son some money, which he said was three hundred dollars, to carry to Thomas P. Collins. Ben. Cook, a freedman, testified to the same fact.

Samuel Goodman testified that about January or February, 1864, he heard a son of John Cook tell the deceased, Collins, that he wanted to make a settlement for his father. Collins was unable to find the note, whereupon the son paid an amount of money to Collins, remarking, "Here is the money, and when you find the note you can send it to my father."

One witness, Wootters, in January, 1867, was desirous to secure himself by trust deed on the land for supplies furnished John Cook, and inquired of Thomas F. Cook if there was any encumbrance on the land, who answered that he thought not, but that Stilwell Box could tell. Stilwell Box, being inquired of by both of them, informed them that he had transferred the note to T. P. Collins. Witness afterwards inquired of Collins if he held any lien on the land, and was answered that he did not. This answer he communicated to Thomas F. Cook, and Wootters received a trust deed on two hundred acres of the land, and now holds deed from defendant to the same. No exception was taken on the trial to any portion of this witness' testimony.

The last witness was corroborated in his testimony by that of defendant, who swore, in addition, that he pur-

chased the land on the faith of what Collins had told
Wootters in regard to there being no lien, and also what
his father had told him, but did not inquire of Collins in
person ; that he knew of no claim against the land ; that
his father, at the time of the purchase, owed him largely
for supplies and provisions, which debt was canceled
by the conveyance, in addition to which witness was to
pay off the trust deed held by Wootters, which he did,
and bought other supplies, and paid for his father other
debts to amount of the purchase money ; that he had set-
tled up "pretty much all the debts" he thought his father
owed; that John Cook died in September, 1869, and
owned a wagon and two horses, and some plough-gear
and farming utensils—all old ; that no administration was
had on his estate ; that the land conveyed to Thomas F.
Cook by his father was three hundred and seventy-five
acres, worth $2.50 or $3 per acre, and that witness had
paid on the land, and in liquidating debts for his father,
over fifteen hundred dollars.

The plaintiff then introduced L. E. Downs, who testified
that John Cook, in 1867, owed him a considerable amount
of money, and, at the request of John Cook, he disposed
of all Cook's cotton under an agreement to pay the pro-
ceeds *pro rata* on all Cook's indebtedness, and that Cook
mentioned, among others, a debt to Collins, on which
witness made a *pro rata* payment, the amount not re-
membered.

James Collins, who was a clerk for Thomas P. Collins
in 1867, was also introduced, who testified to the making
of a payment by Downs, in 1867, on the note sued on.

The court, after stating the case, instructed the jury as
follows:

"The jury will, as you believe from the evidence,
answer the following questions : 1. What is the amount
of the principal and interest of the two notes sued on (if
anything) after deducting any and all credits and pay-

ments you may believe to have been made upon the land, and what amount of this sum is the purchase money of the tract of land described in plaintiff's petition (if any)?

"2. Did the defendant, Thomas F. Cook, purchase from and pay his father, John Cook, for the tract of land here in controversy, or was the conveyance made by John Cook to the defendant fraudulently and made without consideration?

"3. If the defendant purchased the land, did he know that Thomas P. Collins, at that time, was claiming a vendor's lien upon the land.

"Upon the question of notice, if there are any facts stated in the deed read to you as evidence going to show that the purchase money of the land was not paid, that of itself would be notice to the defendant, and he could not be an innocent purchaser; or, if the facts show that there were circumstances within the knowledge of the defendant that would have put a reasonable man upon inquiry as to the fact of the payment of the purchase money of the land, and he failed to make such inquiries, or that he did make the inquiry and found that the purchase money was not paid, then he could not be an innocent purchaser.

"But if he, the defendant, did inquire of T. P. Collins himself, or by any other, as to whether he held a vendor's lien upon the land, and that Collins declared that he held no such lien upon the land, and that subsequently to this the defendant, acting upon this information received from Collins, purchased the land, then and in that case he, the defendant, would be an innocent purchaser, and a vendor's lien then held by Collins could not be enforced against such tract of land.

"If John Cook made and executed the deed from himself to the defendant upon the consideration alone that at that time he was due the defendant, and that said deed

was made for the purpose of extinguishing said indebt-
edness, and at the same time other indebtness existed
against said John Cook, more than his estate could pay,
then this consideration would not be such as to carry the
title; but if the defendant purchased the land from John
Cook, and the consideration was that the defendant was
to take up outstanding claims against the said John
Cook, and that the defendant did this, then the consider-
ation would be a good one, and the title would pass.

"A promissory note made by John Cook to Stilwell
Box, as the purchase money of a tract of land, and that
note being transferred to T. P. Collins by Cook, Collins
could enforce the vendor's lien against the land while
owned and held by John Cook; and should Cook renew
this note to Collins, it would not change or affect the
rights of Collins as to his lien. But when the fact shows
that a deed was made by Box to John Cook, and from
John Cook to the defendant, Thomas F. Cook, and these
deeds show nothing upon their face about the purchase
money in favor of the assignee of the note, it would be
necessary for the plaintiff to allege and prove notice upon
the purchaser of the existence of the lien.

"The jury will consider all the facts as developed by the
evidence, and from the same, under the rules here given,
you will answer clearly and distinctly these several ques-
tions propounded."

The verdict, in response to the first special issue, found,
that there was due on the notes $635.32, and that $606.03
of that sum was due as purchase money on the land.
The responses of the jury to the second and third special
issues were as follows, viz.:

"2. We, the jury, believe that the defendant, Thomas
F. Cook, did purchase from his father, John Cook, the
land herein described and in controversy, and did pay
him for the same. We also believe that John Cook did
convey the said land to the defendant, Thomas F. Cook,

in good faith, and that he, said defendant, paid a valuable consideration for the same.

"3. We, the jury, believe that the said defendant, Thomas F. Cook, did not know that Thomas P. Collins claimed a vendor's lien on said land at the time he purchased the same from his father, John Cook."

The plaintiff filed a motion for new trial and in arrest of judgment, both of which were overruled. The character of these motions is sufficiently indicated in the exceptions noticed in the opinion.

*Nunn & Williams* and *Jackson & Jackson*, for appellant.—It is plain, that if the conveyance was fraudulent, it is void as to the creditors, and, of course, void as to the creditor seeking the collection of the unpaid portion of the purchase money of the land. (See Article 3876, Paschal's Digest ; Castro v. Illes, 22 Texas, 479; Edrington v. Roger, 15 Texas, 193–6; Story's Equity, Section 369; Wood v. Chambers, 20 Texas, 253; Baldwin v. Peet, 22 Texas, 715.)

Also, it is equally plain, that a purchaser of real estate, seeking to protect himself against the equities of the creditor for the unpaid purchase money, must not only have bought in good faith, but also must have paid a valuable consideration therefor, without notice of prior liens or encumbrances. (See Briscoe v. Bronough, 1 Texas, 326; Hawley v. Bullock, 29 Texas, 222; Watkins v. Edwards, 23 Texas, 447; Parker v. Foy & Florer, 5 American R., 485, 486.)

Then, by what right had the judge to say, "Or was the conveyance made to John Cook fraudulently and made without consideration," when he was seeking to elicit from the jury a response to the question whether Cook had paid a valuable consideration for the land. There is no portion of the general instruction that can atone for this egregious error, as this is the pointed, di-

rect question to which the jury is required to respond, and they will not be presumed to go beyond the terms employed in the interogatory to make up their answer; indeed, if they did, they might not answer this categorical question.

Suppose they had answered this question, that there was no fraud, and that appellee had paid a valuable consideration, does this entitle the appellee to judgment? We think not, for the reason that they could not find for the appellant to the effect that a valuable consideration had not been paid, unless they proceeded further and found that the deed was fraudulently made, which they might be unwilling to do, especially when appellant's counsel did not deem it necessary to urge the matter of fraud as against a deceased party.

No antecedent indebtedness from grantor to grantee constitutes a valuable consideration in law sufficient to defeat the equities of the original vendor for unpaid purchase money. (See Ayers v. Duprey, 27 Texas, 593; Dickerson v. Tillinghast, 4 Paige, 215; Wright v. Douglass, 10 Bard., S. C., 97.)

The law gives the equity in favor of vendor for unpaid purchase money. This equity may exist without a pretentious claim, as well as with it, and subsequent purchasers will be affected by it if they have actual or constructive notice of the fact that the purchase money remains unpaid. (See Briscoe v. Bronough, 1 Texas, 326; McRimmon v. Martin, 14 Texas, 318; McAlpin v. Burnett, 19 Texas, 500; 2 Story's Equity, Sec. 1224; 2 Washburn on Real Property, 88, 89; 4 Kent. Com., 155–6.)

A party will, in many instances, be concluded by his declarations or conduct, which may have influenced the conduct of another to his injury. A party is said in such cases to be estopped from denying the truth of his admission; but to the application of this principle, with respect to the title of real property, it must appear, first,

that the party making the admission, by his declaration or conduct, was apprised of the true state of the title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and further, that he relied directly on such admission, and would be injured by allowing its proof to be disproved. (Page v. Arnim, 29 Texas, 72 ; Boggs v. Murced, 14 Cal., 367.)

*Moore & Spence*, for appellee.

DEVINE, ASSOCIATE JUSTICE.—Plaintiff, as executrix, brought suit against defendant in the District Court at the March term, 1873, to enforce the vendor's lien on a tract of land claimed by defendant.

The petition alleged that Stilwell Box had conveyed in 1859 a tract of land in Houston county to John Cook; that plaintiff's testator, Thomas P. Collins, received the note for the unpaid purchase money from Box, for a valuable consideration; that John Cook, the vendee, had transferred his interest in the land in June, 1869, to defendant; that the sale was fraudulent, intended to delay, hinder and defraud creditors; that it was made without consideration, and that defendant, at the time of and before his purchase, had notice of the vendor's lien then existing for the unpaid balance of the purchase money.

Defendant answered, and, with other matters, denied all collusion or fraud; asserted that he was a *bona fide* purchaser for a valuable consideration; that he purchased the land under the belief that there was no lien or encumbrance on it, and that the statements of the assignee and the holder of the note, Thomas P. Collins, that he held

no lien on the land, had influenced defendant in the belief that the land was not encumbered by any claim.

There was a verdict and judgment in favor of defendant, a motion for a new trial, and in arrest of judgment, which were overruled, and an appeal taken.

Of the twelve grounds of error assigned by appellant, it is only necessary to notice seven, as they embrace or cover the remaining five.

The first ground of error is, "The court erred in overruling plaintiff's exceptions to defendant's pleas and defense." We are unable to find any such exceptions in the transcript.

The second assignment of error, "The court erred in admitting testimony of James Wootters, as shown by plaintiff's bill of exceptions," is not, as seen by an examination of the bill of exceptions referred to, a cause of complaint. The question there presented is as follows: "Defendant's counsel offered to prove the declarations of plaintiff's testator, Thomas P. Collins, that he held no vendor's lien upon the land in controversy; to which declarations counsel for plaintiff objected, on the ground that such declarations were only the opinion of said Collins upon a question of law, and, further, that there were no pleadings to let in proof of an estoppel." There was no error in overruling this objection. It was admissible as evidence to show that defendant (from the declarations of Collins that he held no vendor's lien) had been induced to believe, or strengthened in the belief, that the land was free from the vendor's lien, as there was nothing on record to contradict it. The pleadings to let in proof, etc., were sufficient.

The other objection raised to the evidence of Wootters, presented in the supplemental motion for a new trial, "that Wootters was a party in interest, he having a deed to more than one-half of the land sought to be made liable, and was not competent to testify to the declara-

tions of a deceased party, in a suit with the legal representatives," etc., should have been raised on the trial. Wootters disclosed the fact, that he held in 1867 a deed of trust on two hundred acres of the land, and was at the time of trial the owner of the same by an absolute deed from defendant. These facts could, it is presumed, have been known by an examination of the county records; or, when discovered on the trial, a motion could have been made to exclude his evidence from the consideration of the jury. This was not done, and the objection after trial came too late.

The third error complained of, that "the court erred in its charges to the jury," is not sustained by an examination of the pleadings, the evidence, or the charge. The charge of the court briefly stated all the material points relied on by plaintiff and defendant in their pleadings, and in general terms gave the law of the case clearly and properly to the jury. An objection is made to that portion of the charge which states, "or was the conveyance made by John Cook to the defendant fraudulently and made without consideration;" on the ground that the court required the jury, before they could find in favor of plaintiff, to be first satisfied that the conveyance was not only fraudulently made, but likewise made without a valid consideration to support the conveyance or deed. To test the propriety of this portion of the charge, it is necessary to look to the pleadings and the statement of facts. The plaintiff charged, and at great length repeated in her amended pleadings, that John Cook was greatly indebted — in fact, insolvent; that defendant not only knew these facts, but was also aware of the existence of the vendor's lien; that, knowing these facts, he obtained a conveyance from his father, with a view to defeat the vendor's lien and creditors generally, and that he paid no consideration for the land so conveyed.

The statement of facts shows that John Cook was large

ly indebted at the time, and owned but little property; there was also evidence which showed that defendant had paid a valuable and sufficient consideration. In view of these facts, we are of opinion that there was no error in the portion of the charge complained of. To entitle the plaintiff to a verdict under the pleadings and evidence, it was necessary for the jury to be satisfied, not only that the transfer was a fraud on the rights of creditors, but that no sufficient consideration had passed from Thomas F. to John Cook, the vendor. A transfer without consideration to defendant could not be set aside by plaintiff, save on the ground that the vendor being largely indebted—in fact, having no property worth noticing to pay his creditors at the time of the conveyance but the land in question—such conveyance by John Cook was in law a fraud upon his creditors.

If, however, John Cook had designed to perpetrate a fraud on his creditors by disposing of this land, and the defendant was not a party to his contemplated fraud, and paid a sufficient consideration, the conveyance would stand.

The fourth assignment, that "the court erred in submitting special issues to the jury," is not apparent from an examination of the special issues presented in connection with the pleadings and evidence. Whatever objections exist, or may be raised, against the abuses committed under this mode of instructing or charging a jury, a sufficient answer to the objection that special issues were presented is found in Paschal's Digest, Article 1469, and cases referred to in Note 565. In this cause the judge presented the main questions in a clear and proper form, and no exception was taken to the presenting of special issues by the court.

The sixth ground, that "the court erred in refusing special instructions asked by plaintiff," was not error, as the special charges asked, so far as they had any

application to the case, had been given in the general charge.

The ninth and tenth grounds of error, "that the verdict is contrary to law, and is contrary to the evidence," are best answered by a brief statement of the facts in the case. The evidence shows that nearly ten years had passed between the date of John Cook's purchase from Stilwell Box to the date of defendant's purchase; that the deed from Box to Cook in 1859 was a warrantee deed, reciting the payment in full of the purchase money by Cook; that in all that interval of time (nearly ten years) no claim of a vendor's lien had been set up, either by Box, while he held the note, or by his assignee, Thomas P. Collins. The reverse of this was shown by the declarations of Collins to Wootters (previous to his furnishing John Cook supplies, for which he obtained, in 1867, a deed of trust on two hundred acres of the land), that he (Collins) held no lien on the land. Again, the defendant did not arrive in Texas until seven years after this debt had been contracted; and when the deed was executed in June, 1869, to show the absence of any apparent fraud or secrecy, Stilwell Box, the original vendor and payee of the note, appears as one of the witnesses to the deed.

The defendant testified that he paid four hundred dollars for the land, he taking it with the encumbrance of the trust deed in favor of Wootters, and embracing more than the half of the tract.

This evidence was certainly sufficient to support the verdict, it being uncontradicted, or impaired in any degree, save by the fact that John Cook, when he sold the land, was owing several persons more than he was able to pay. The absence of any fraudulent intent on his part, if it were necessary for the defendant to prove a negative, is shown (by a witness for plaintiff), in a transaction in which his (Cook's) honesty shines out in the latter part of his life, by the voluntary placing his cotton crop in the hands

of a merchant, with directions to sell and apply the pro-
ceeds to the *pro rata* payment of all his creditors.    The
fact seems to have been lost sight of, that the plaintiff
having nothing more than a tacit equity against the
legal title of defendant, the burden of proof lay on her
to bring notice home to defendant of fraud, actual or
constructive, the knowledge of his secret lien, or that
John Cook being largely indebted at the time of the
transfer, defendant had not paid a sufficient considera-
tion.    (See McAlpine v. Burnett, 23 Texas, 649.)    That
the jury might, under a different view of the facts, have
found for appellant, furnishes no reason for this court to
disregard or set aside the verdict.    There was evidence
sufficient to sustain it; they had the witnesses before them,
and all the circumstances connected with the transactions
inquired into, in a clearer light and more complete in all
the details than a statement of facts can ever show to an
appellate court.    The judgment of the District Court is
therefore affirmed.

AFFIRMED.

Motion for rehearing overruled.