1. VERDICT — SPECIAL ISSUES.— Where the verdict is found upon special issues, the appellate court cannot look beyond it to any fact apparent in the record in aid of the judgment. 29 Tex., 391; 27 Tex., 406; id., 685; 22 Tex., 306; 40 Tex., 238; 44 Tex., 284; id., 626; 45 Tex., 342.

2. LANDLORD AND TENANT.— The rule that a tenant will not be allowed to controvert his landlord's title extends to the tenant holding over. He may buy in the landlord's title, or one consistent with it, and defend under such purchase. The purchase of an outstanding title by a tenant may be repudiated by the landlord, in which event the tenant may assert the title so purchased, subject to the obligations he is under by the terms of his lease. Taylor on Landlord and Tenant, sec. 705.

3. MORTGAGEE.— The right of the mortgagee to buy at his own sale, when the mortgage has a power to sell, does not include the right of the mortgagee, while administering the property prior to the foreclosure sale, to deal with the trust property otherwise than as a trustee. 6 Tex., 184; Perry on Trusts, sec. 209.

4. HOMESTEAD — UNIVERSITY LAND.— A purchaser of university land, or his vendee, who has not perfected his title thereto by payment to the state of all the purchase money, may nevertheless, as against creditors, assert his homestead right in the land.

APPEAL from Grayson. Tried below before the Hon. R. R. Gaines.

September 16, 1875, Myers brought suit in the district court of Grayson county against McShan for the possession of fifty acres of land. The petition alleged a lease January 4, 1874, by Myers to McShan, in writing, for one year, the lease being made an exhibit, at $250 per year, one-half paid cash and remainder payable at close of year, McShan to make necessary improvements, to be deducted from the rent. That August 10, 1874, the parties had made another contract, also an exhibit, under which defendant claims to hold the possession. That the land was the homestead of plaintiff and his family at the time of the lease and so continued. The second exhibit showed that August 10, 1874, Myers had executed to McShan a promissory note for $210, due September 1, 1874, and to bear three per cent. per month interest after maturity, and at the same time Myers executed to McShan a mortgage on the land to secure the note.

Possession was claimed — rent $125 — on account for 1874, and for 1875 the sum of $300; all claimed as damages.

September 28, 1875, defendant answered by general denial; special denial that the land was the homestead of plaintiff; pleaded possession under the mortgage of date August 10, 1874, and alleged that for expense of labor and repairs made on the place no payment had been made, and that their value equaled the rents due, etc.; setting out an exhibit (K) of items, total amount $213.11; alleged an arbitration of matters in part, and the award to him of $262.98, award by Trottinger and Graves, and since the award,

money, material and labor expended on the place amounted to $119.65.

Prayer for judgment and enforcing mortgage.

August 2, 1876, plaintiff amended, praying additional rent of $300, for year 1876, which he pleads in offset and reconvention against the claims of defendant; this apparently applying to his entire claim for damages.

August 4, 1876, defendant amended, alleging that he is the just, legal and equitable owner of the land — setting out the history of the title; that the fifty acres formed part of a tract of one hundred and sixty acres, purchased by John Hughes, of university land, and that on February 12, 1876, defendant had bought and Hughes and wife had deeded the said fifty acres to defendant; that Myers had never paid any part of the purchase money to obtain a patent therefor; that plaintiff had frequently been requested to pay by Hughes and by defendant prior to defendant's purchase from Hughes, and that Myers always refused to pay, and had abandoned his contract of purchase. That the one hundred and sixty acres was part of Hughes' homestead, etc. Hughes' death, April, 1876; patent 22d June, 1876, to Hughes' heirs.

Prayer that Myers' contract be annulled, and his claim as cloud be removed, etc.

August 4, 1876, plaintiff filed exceptions to the several pleadings of defendant.

August 4th, plaintiff, in replication to last amendment of defendant, alleged his purchase, September 19, 1867, of the fifty acres of John Hughes, and Hughes' bond to make title when patent should issue (the bond is in $300, and obliges Hughes, he having sold for value, to make title when patent shall issue); that previous to Hughes' purchase of the one hundred and sixty acres, he had, by parol contract with plaintiff, agreed to buy it and convey the fifty acres to plaintiff; plaintiff had paid Hughes the purchase money, and had erected house and improvements worth $1,000. Hughes was to buy the land; perfect title when patent, etc. Facts

were alleged showing that the fifty acres formed no part of Hughes' homestead; that defendant took the deed from Hughes and wife with full knowledge of all the facts, and purchased only such right as Hughes had, taking a quit-claim.

August 8, 1876, defendant amended; that Hughes agreed with Myers that if he would pay $200 and the proportionable part of the fifty acres to the state, he should have the land. The valuable consideration was that Myers was to pay the purchase money to the state; that Myers refused to do so and repudiated the contract, and that Hughes was compelled to sell, not being able to raise money to protect the entire one hundred and sixty acre tract, etc.; asks judgment for purchase money and foreclosure of his vendor's lien in event plaintiff recovers the land. Also that Myers is insolvent, and represented to defendant that the land was not homestead; that defendant was compelled to buy of Hughes to prevent eviction; that defendant was induced to take possession of the land, loan money, etc., by Myers; liability to Hughes, etc. Upon which pleadings upon special issues the jury found the facts following:

1. Myers had a family August 10, 1874, the wife living.

2. The land was his homestead then.

3. He had no other homestead.

4. He had not abandoned it.

5. And never since has.

6. No damages from McShan's acts in 1874.

7. Nor since then.

8. The value of the rent a year is $250.

9. Hughes was a married man when he made the bond to Myers. (The bond 19th December, 1867, from Hughes to Myers.)

10. After Hughes sold Myers fifty he had two hundred left.

11. Myers was to pay the state (in his trade with Hughes).

12. McShan paid $210.12½ in order to make good Hughes' title from the state.

13. McShan has put necessary repairs on the land, value $193.26.

Upon this verdict the court rendered a decree for plaintiff for the land, for costs, and for defendant against the plaintiff for $304 and three per cent. per month interest.

Defendant moved for a new trial because:

1. The judgment is contrary to the verdict.

2. It is not in conformity to the pleadings.

3. It is contrary to law, the evidence and the pleadings.

Motion being overruled the defendant appealed. The assignments are numerous, but they attack the judgment as not supported by the pleadings and the findings of the jury, and the action of the court in excluding evidence of an award offered by the defendant.

*Bledsoe & Head*, for appellant.

*A. E. Wilkerson*, for appellee.

A. S. WALKER, J.— 1. In the view of the case taken by us a reversal becomes necessary because the special verdict, or rather the facts found on the issues submitted, do not authorize the verdict as rendered, nor are they sufficiently full to enable this court to reverse and render such judgment upon it as would do justice to the parties.

On the part of appellant it is insisted that the pleadings and evidence may be looked to, to ascertain the necessary fact that the executory contract for the sale of the land between Hughes and Myers was terminated by Hughes or repudiated by Myers. Time not being on its face of the essence of the contract, it could only be made so, or terminated by Hughes, by giving express notice of such act to Myers. Scarborough *v.* Arrant, 25 Tex., 136; Hill *v.* Still, 19 Tex., 85. Such act on part of Hughes is not shown. The repudiation of the obligation to pay the state dues, found in the pleadings and evidence, would, in effect, probably be a repudiation of the contract sufficient to authorize Hughes' sale to McShan.

But neither of these facts is found by the jury.

On the other hand, in support of the verdict, Myers looks to the documentary evidence and to the pleadings to supplement the verdict in a basis for the judgment. As apparent from the verdict, there is in it no foundation for the disposition made of the rents; their amount; what was done with the claim for improvements; how the money judgment was computed, etc. · Taken in connection with the pleadings and exhibits (all the documentary evidence formed parts of the pleadings as exhibits), the mode of action in the mind of the court below in reaching the judgment can be understood.

But we are not allowed to look beyond the special verdict.

" When the verdict is found upon special issues alone, the court cannot look beyond it to any fact apparent in the record in aid of the judgment." Kuhlman v. Medlinka, 29 Tex., 391; Ledyard v. Brown, 27 Tex., 406; Rains v. Calloway, 27 Tex., 685; Sharp v. Baker, 22 Tex., 306; Collins v. Cook, 40 Tex., 238; Harrison v. Mabry, 44 Tex., 286; Mussina v. Shepherd, 44 Tex., 626; Frost v. Frost, 45 Tex., 342.

2. The action of the court in excluding the award offered can be remedied on a new trial. The description, if defective, can be corrected by amendment.

3. That the title to the land by Myers was not perfect as against the state or against his vendor, Hughes, does not prevent homestead rights from attaching to it, under the circumstances provided by the constitution and laws creating such right, as against all others. As against McShan, when this suit was brought, Myers could disregard the mortgage, in behalf of the homestead rights of his family.

4. The pleadings of the plaintiff at the time McShan bought of Hughes and wife were *clear* and *pointed* that McShan was neither mortgagee nor tenant. Possession and damages for wrongful conversion of the profits were claimed. No rights were accorded to McShan under contract. By the petition he was a trespasser — mesne profits claimed instead of rents. On the other hand, McShan claimed by his

pleadings that his possession was *under* contract with Myers, both as tenant holding over and having the right to payment in rents of his advances, and as mortgagee having the right to payment of his debt.

There was, however, in the amended petition of August 2, 1876, a partial recognition of McShan's tenancy as lessee in the prayer to offset the rents against his claims set up in his answer.

But at the date of his purchase from Hughes and wife, February 12, 1876, there was no recognized contract trust relation between the parties. Will the law affect their relations to the property and to each other with reference to it with such relation?

This question we only suggest, it not being before us for decision.

The rule is general that a tenant will not be allowed to controvert his landlord's title. The rule extends to the tenant holding over. Taylor on Landlord and Tenant, § 705. The tenant may buy in the landlord's title, or one consistent with it, and defend under such purchase. His resistance in such case is *under* and not *against* the title under which he entered. Id.; Comley v. Stanfield. The right to purchase does not appear to extend further.

But the purchase of an outstanding title by a tenant could be repudiated by the landlord, who is not compelled to adopt the acts of the tenant as his agent in the purchase. Should the landlord disaffirm the act the tenant would be remitted to the assertion of the title; and in such case could do so, subject, however, to all the obligations he is under by the terms of his lease; and in this case, should Myers repudiate McShan's action in the purchase, and a successful assertion of right to the land under his purchase be made, he would still be liable for rents up to his purchase, and costs, if the allegations in the petition be proven. The right of the mortgagee to buy at his own sale, when the mortgage has a power to sell, does not include the right of the mortgagee, while administering the property prior to the foreclosure sale, to deal with the trust property otherwise

than as a trustee.   Howard v. Davis, 6 Tex., 184; Perry on Trusts, § 209.   To enable the plaintiff to take the benefit of this relation it should be recognized.   The recognition and authority to buy in the outstanding title would be presumed, and the court would charge the property with the expense of such purchase to reimburse the outlay.

We believe that in the absence of express repudiation on the part of Myers, the law would attach to McShan in his purchase the obligation and duty of trustee, both as mortgagor in possession and as tenant.   Perry on Trusts, §§ 209, 210.

This relation to the property could be repudiated by Myers, and he could choose to treat McShan as dealing for himself; in which event he could assert whatever right Hughes and wife could convey to him February 12, 1876, in their deed.   To obtain the benefit of McShan's purchase Myers must recognize McShan as having in some capacity acted for him.

It would seem, then, that to prevent McShan from using the Hughes title, his rights as tenant holding over and as mortgagee should be recognized in offsetting rents against his claims, if provided for in the lease and the note, etc., and in paying his outlay in buying the Hughes title.

For the insufficiency of the special verdict under the pleadings and evidence to sustain the judgment below it should be reversed.

REVERSED AND REMANDED.